IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

_____

QUINTEZ CEPHUS,

        Plaintiff,

     v.                                          Case No. 18-cv-832

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM,
LAUREN HASSELBACHER, in her
individual and official capacity, CATHY TRUEBA,
in her individual and official capacity, and
REBECCA BLANK, in her individual
and official capacity,

        Defendants.

_____

**COMPLAINT AND JURY DEMAND**

_____

      Plaintiff Quintez Cephus (hereinafter referred to as "Plaintiff"), by his attorneys Nesenoff & Miltenberg, LLP, and Cross Law Firm, S.C., as and for his complaint against Defendants the Board of Regents of the University of Wisconsin System, Lauren Hasselbacher, Cathy Trueba and Rebecca Blank (hereinafter collectively referred to as "Defendants"), respectfully alleges as follows:

**THE NATURE OF THE ACTION**

      1.    This action arises from the egregious miscarriage of justice committed against Plaintiff by the University of Wisconsin-Madison's refusal to stay a University Title IX disciplinary investigation against Plaintiff despite its knowledge that a concurrent criminal case stemming from the same allegations is ongoing.

1

2.      On May 31, 2018, Plaintiff was notified by Defendant Hasselbacher that the University was initiating an investigation concerning alleged misconduct that occurred during a consensual sexual encounter that took place on the evening of April 21, into the early morning of April 22, 2018 with two fellow University of Wisconsin female students. The University was aware of the alleged misconduct as early as April 26, 2018.

3.      In May of 2018, Plaintiff learned that the Dane County District Attorney was investigating charges against him arising from the same events.

4.      Nearly four months later, on August 31, 2018, Defendant Hasselbacher issued her Initial Investigative Report concerning the Title IX complaint against Plaintiff, despite Plaintiff's inability to participate in an interview or otherwise meaningfully participate in the University's process.

5.      Due to the pending criminal matter which arises out of the same facts and events, Plaintiff has to date been unable to meaningfully and fully participate in the University's Title IX proceeding.

6.      Defendants have knowingly and intentionally forced Plaintiff into the predicament of having to either waive his Fifth Amendment right against self-incrimination by choosing to participate in the University process despite the potential harm to his criminal defense, or decline to participate in the University's process thus leading to the inevitable finding of responsibility and severe sanctions.

7.      In failing to stay the University's Title IX proceeding pending the resolution of the criminal matter, Defendants are knowingly and intentionally violating Plaintiff's fundamental constitutional rights.

8.      Given the severity of the potential sanctions, including expulsion, that could be imposed by the University should Plaintiff be found responsible for the alleged misconduct, he is entitled to his procedural due process rights in the University proceeding.

9.      This matter highlights the widespread issue of colleges and universities, including the University of Wisconsin-Madison, investigating and adjudicating allegations against its students prior to the conclusion of any parallel criminal case.

10.     Plaintiff therefore brings this action to obtain relief based on claims for violation of his Fourteenth Amendment Procedural Due Process rights, violation of Fourteenth Amendment Equal Protection and racial discrimination in violation of 42 U.S.C. § 1981.

## THE PARTIES

11.     Plaintiff is a natural person and a resident of the state of Georgia.

12.     Defendant Board of Regents of the University of Wisconsin System consists of 18 members who are responsible for establishing policies and rules that govern the University System. It is governed by Chapter 36 of the Wisconsin Statutes.

13.     Defendant Lauren Hasselbacher ("Defendant Hasselbacher") is a natural person and, upon information and belief, a resident of the State of Wisconsin. Defendant Hasselbacher was the Title IX Coordinator of the University of Wisconsin-Madison at all relevant times herein.

14.     Defendant Cathy Trueba ("Ms. Trueba") is a natural person and, upon information and belief, a resident of the State of Wisconsin. Ms. Trueba was the Director of the Office of Compliance at the University of Wisconsin-Madison at all relevant times herein. Ms. Trueba was responsible for overseeing the University's compliance with Title IX and allegations of discrimination.

15.     Defendant Rebecca Blank ("Ms. Blank") is a natural person and, upon information and belief, a resident of the State of Wisconsin. Ms. Blank was the Chancellor of the University of Wisconsin-Madison at all relevant times herein. As Chancellor, she was responsible for implementing the policies and procedures pursuant to which the investigation against Plaintiff was to be carried out.

## JURISDICTION AND VENUE

16.     This Court has federal question and diversity jurisdiction pursuant to 28 U.S.C. § 1331 and § 1332 because (i) the federal law claims arise under the constitution and statutes of the United States; and (ii) Plaintiff and Defendants are citizens of different states.

17.     This Court has personal jurisdiction over Defendant Board of Regents on the ground that it is conducting business within the State of Wisconsin.

18.     This Court has personal jurisdiction over Defendant Hasselbacher on the ground that she was employed by University of Wisconsin-Madison as Title IX Coordinator at all relevant times herein.

19.     This Court has personal jurisdiction over Defendant Trueba on the ground that she was employed by University of Wisconsin-Madison as Director of the Office of Compliance at all relevant times herein.

20.     This Court has personal jurisdiction over Defendant Blank on the ground that she was employed by University of Wisconsin-Madison as Chancellor at all relevant times herein.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

21.     Plaintiff Quintez Cephus, an African American male, was raised by a single mother and grandmother in Macon, Georgia. Due to the life-changing intervention of a guidance counselor at his elementary school, Plaintiff was admitted to college preparatory school Stratford

Academy where he thrived despite his learning disabilities. In particular, he excelled athletically. His talents were noticed by the University of Wisconsin which recruited him as a wide receiver for the University of Wisconsin football team, with the class of 2020.

22.     The University's football team at the time of Plaintiff's recruitment and still today, is a highly ranked national collegiate team. As a star wide receiver, Plaintiff was a strong candidate to be a high draft pick in the National Football League ("NFL").

23.     Plaintiff matriculated at the University in June of 2016, at which time the University provided him with the policies and procedures related to academic and non-academic misconduct.

24.     On the evening of April 21 into the morning of April 22, 2018, Plaintiff engaged in consensual sexual activity with fellow University of Wisconsin students, Complainant 1 and Complainant 2. Both Complainants are Caucasian females.

25.     On the afternoon of April 22, 2018 officers from the Madison Police Department executed a search warrant of Plaintiff's apartment, stemming from allegations concerning the events of the previous evening.

26.     On April 26, 2018, the Student Athlete Disciplinary Committee suspended Plaintiff from the football team when the Athletic Department was advised by Defendant Hasselbacher that criminal charges were imminent.

27.     On April 27, 2018, Plaintiff retained criminal attorney Stephen Meyer ("Mr. Meyer").

28.     On April 30, 2018, Plaintiff received a No Contact Order from Defendant Hasselbacher notifying him that he was prohibited from having contact with Complainant 1.

29.    On May 1, 2018, Plaintiff received a No Contact Order from Defendant Hasselbacher notifying him that he was prohibited from having contact with Complainant 2.

30.    On May 29, 2018, Defendant Hasselbacher sent Plaintiff a Notice of Charge letter which indicated the Office of Compliance received information alleging a violation of the University of Wisconsin Administrative Code (UWS Chapter 17). Specifically, Plaintiff was alleged to have engaged in sexual activity with Complainant 1 and Complainant 2 on May 22, 2018 while they were incapacitated from alcohol and unable to provide consent.

31.    With respect to Complainant 1, Plaintiff was alleged to have engaged in Sexual Assault in the Second Degree, Sexual Assault in the Third Degree, Sexual Assault in the Fourth Degree, a violation of Criminal Law and Sexual Harassment. With respect to Complainant 2, Plaintiff was alleged to have engaged in Sexual Assault in the Second Degree, Sexual Assault in the Third Degree, a violation of Criminal Law and Sexual Harassment (collectively, the "Charges").

32.    Defendant Hasselbacher sent a revised Notice of Charge letter on May 31, 2018, which changed the date of the alleged incident from May 22, 2018 to April 22, 2018, eliminated the allegation of fourth degree sexual assault as to Complainant 1 and added a new charge of violation of Wis. Stat. 942.09(2)(am)(1) with respect to Complainant 2. Defendant Hasselbacher requested that Plaintiff contact her to schedule a meeting during which he could respond to the allegations.

33.    Later that day, Plaintiff's criminal attorney Mr. Meyer contacted Defendant Hasselbacher by email to schedule the requested meeting.

34.    Defendant Hasselbacher responded that she would be willing to meet with Plaintiff and his advisor at any point to discuss the investigation process and answer any

questions, however she advised that she would likely "have more questions for [Plaintiff] after I'm further along in the investigation process, so if it is your preference we can wait to meet until then."

35.     On June 4, 2018, Defendant Hasselbacher emailed Plaintiff and Mr. Meyer to notify them that she would contact both of them when she "would like to schedule a time to discuss the allegations with [Plaintiff]."

36.     By letter dated June 6, 2018, Mr. Meyer advised Defendant Hasselbacher of critical, exculpatory information obtained by law enforcement, the Madison Police Department and the Dane County District Attorney's office, which refuted the allegations of the Complainants. Such evidence included toxicology reports, security camera footage, a forensic examination of Plaintiff's phone and the results of the execution of a search warrant of Plaintiff's apartment.

37.     Nearly two weeks later, on June 19, 2018, Defendant Hasselbacher responded to Mr. Meyer's email, indicating that she had requested the Madison Police Report. Failing to address the additional exculpatory evidence referenced in Mr. Meyer's June 6 letter, Defendant Hasselbacher wrote:

> "Also, I want to clarify that [Plaintiff] can provide information relevant to the investigation at any time which could include participating in an interview. You can also provide names of witnesses or other documentation (text messages, photos, etc.) that you believe may be relevant. Otherwise, it is my intention to alert you when I am nearing the conclusion of the investigation and provide an opportunity to meet with me at that time."

38.     By letter dated June 21, 2018, Mr. Meyer notified Defendant Hasselbacher that "despite the pending criminal investigation, it is still our (Quintez and myself) intention to cooperate and participate in your investigation." As such, he reiterated that there was critical

evidence in the possession of the police department, none of which Defendant Hasselbacher had obtained.

39.     The next contact from Defendant Hasselbacher came more than one month later. Again, failing to address the critical evidence offered by Mr. Meyer, on July 26, 2018, Defendant Hasselbacher emailed the following:

> "Please let me know if [Plaintiff] would like to provide any additional information via an interview, written statement (or answers to questions via email) or other evidence that may be relevant (text messages, photos, etc.). If there are any specific witnesses you would like me to contact, please let me know that as well."

40.     On July 27, 2018 Mr. Meyer acknowledged this request by email and explained that they would need to have a discussion about Plaintiff's participation in light of his learning disabilities.

41.     On July 31, 2018, as no criminal charges had been issued against Plaintiff, he was reinstated to the football team and permitted to attend practice beginning on August 1.

42.     On August 1, 2018 Mr. Meyer met with Defendant Hasselbacher and co-investigator Jennifer Horace, during which they inquired whether Plaintiff would participate in an interview. Mr. Meyer advised that Plaintiff would first need to meet with the investigators to discuss the University's process.

43.     As of August 1, 2018, it was Plaintiff's belief that the Dane County District Attorney's office did not intend to pursue criminal charges against him.

44.     On August 8, 2018 Plaintiff and Mr. Meyer met with Investigators Hasselbacher and Horace so that the Investigators could explain the University process to Plaintiff. Plaintiff did not make a statement and did not answer any questions at this focused meeting. During this meeting, an interview with Plaintiff was tentatively scheduled for August 23, 2018. Due to scheduling conflicts, Plaintiff's counsel subsequently requested that this interview be moved to

August 27, 2018, which was granted. During all of these interactions with Plaintiff's counsel, at no point did Defendant Hasselbacher ever advise them that she would be issuing her Investigative Report, regardless of the Plaintiff's participation, by August 31, 2018.

45.     On August 17, 2018, Plaintiff's attorney, Stephen Meyer was advised that the Dane County District Attorney's Office would now be filing charges against the Plaintiff.

46.     Consequently, by letter dated August 22, 2018 the undersigned counsel advised Defendant Hasselbacher that Plaintiff would now be constrained from participating in the University proceeding as he was now being criminally prosecuted and that requiring him to do so would infringe upon his Fifth Amendment rights.

47.     Thereafter, though Plaintiff had not yet been interviewed by the University, Plaintiff became aware, not from Defendant Hasselbacher, that Defendant Hasselbacher intended to issue her initial investigation report concerning the allegations against Plaintiff no later than August 31, 2018.

48.     Defendant Hasselbacher, prior to her employment with the University of Wisconsin, held a similar position as the Title IX Coordinator with the University of Colorado at Boulder. While at UC-Boulder, Defendant Hasselbacher maintained a Memorandum of Understanding with the Boulder County District Attorney's Office.

49.     Based upon this prior experience, Defendant Hasselbacher understands the relationship between a public university and the local District Attorney's Office and is well informed on the various conflicts that arise when both offices pursue an investigation arising from the same allegations.

50.     As significant, critical, and potentially exculpatory evidence would become available over the next few months in the criminal proceeding, counsel advised Defendant

Hasselbacher that the collection of such evidence would likewise be critical to the Title IX proceeding, further warranting a stay of the University's process until the criminal matter was resolved.

51.     Although the University had actual knowledge of the allegations against him in April 2018, Defendant Hasselbacher elected to wait nearly four (4) months to request an interview with Plaintiff. Accordingly, given the apparent lack of urgency on the part of the University, Plaintiff's counsel in a correspondence dated August 23, 2018 suggested that Defendant Hasselbacher's interview with Plaintiff "be conducted on a date to be agreed upon", after the criminal matter was resolved.

52.     Raymond P. Taffora, the University's Vice Chancellor for Legal Affairs responded by letter dated August 30, 2018 misconstruing Plaintiff's counsel's letter of August 23, 2018 as "a refusal to participate in the University's Title IX investigation while the criminal process is ongoing."

53.     Mr. Taffora acknowledged that the University attempted to obtain potentially relevant and germane information from the Dane County District Attorney's Office. However, the University was advised "that the District Attorney's Office will not provide the University access to additional information prior to the resolution of the criminal proceeding." Moreover, Mr. Taffora wrote "UW-Madison strives to provide a fair and impartial investigation in a timely matter and will consider **available** information. That being said, the University's process is separate from the criminal process, has different legal requirements, has different potential consequences and **is expected to move more swiftly** than criminal proceedings. Accordingly, the University **will not delay the conclusion of its Title IX process until the resolution of the concurrent criminal proceedings**." (Emphasis added.)

10

54.     The following day, August 31, 2018 the Initial Investigative Report (the "Report") was issued by Defendant Hasselbacher. As anticipated, based upon the University's Vice Chancellor's admission that the University has been unable to obtain the information from the DA's office, the Report failed to include the substantial evidence obtained to date in relation to the criminal matter. Despite Plaintiff's repeated requests that this critical information be included in the University's investigation.

55.     The Report included statements from six witnesses, in addition to the two complainants, none of which Plaintiff was able to directly respond to prior to issuance of the Report in light of the criminal proceeding.

56.     On September 14, 2018, Plaintiff submitted a brief procedural response to the Report, highlighting the failure to include exculpatory evidence, addressing his inability to speak freely, and again requesting that the University stay their investigation pending the conclusion of the ongoing criminal matter.

57.     On September 21, 2018, Defendant Hasselbacher issued a Draft Amended Initial Investigative Report.

58.     On September 25, 2018, Plaintiff submitted a brief procedural response to the Amended Initial Investigative Report, again highlighting the failure to include exculpatory evidence, addressing his inability to speak freely, and once again requesting that the University stay their investigation pending the conclusion of the ongoing criminal matter.

59.     On October 2, 2018, Defendant Hasselbacher issued a Second Amended Initial Investigative Report.

60.     On October 7, 2018, for the third time, Plaintiff submitted a brief procedural response to the Second Amended Initial Investigative Report, highlighting the failure to include

exculpatory evidence, addressing his inability to speak freely, and once again requesting that the University stay their investigation pending the conclusion of the ongoing criminal matter.

61.    On October 9, 2018, Plaintiff received an email from Defendant Hasselbacher which stated in part as follows:

> I'm writing to inform you that I've provided the Final Investigative Report to the Office of Student Conduct and Community Standards (OSCCS) for decision making. Assistant Dean Tonya Schmidt, the Director of OSCCS, is copied on this email. Upon receiving the report, Assistant Dean Schmidt will assign the report to an investigating officer for decision-making; in this instance that person will be Assistant Dean Ervin Cox, also copied.
>
> If you have questions about the status of the report, you can contact me or Dean Cox. **Otherwise, the next communication you receive will likely be the Finding Letter.** (emphasis in original).

62.    The University's actions were taken in direct response to both internal pressures to find male athletes accused of sexual misconduct responsible, and external pressures initiated by the father of Complainant 1, Charles Roe.[1] Mr. Roe, a prominent attorney in Chicago, is a financial donor to the University of Wisconsin and is identified prominently on one of the University's Alumni pages.

63.    Upon information and belief, in response to what he viewed as the University's failure to aggressively pursue his daughter's complaint, Mr. Roe communicated directly with the University's Administration throughout the summer of 2018, compelling them to move forward with their proceedings and find Plaintiff responsible on all charges. As an alumnus of the University, and identified prominently on one of the University's Alumni pages, Mr. Roe pressured the University into expediting the investigation against Plaintiff, at the expense of Plaintiff's due process rights.

---

[1] Complainant 1's father is identified pseudonymously as "Charles Roe."

64.     Upon information and belief, Mr. Roe during his summer long lobbying campaign with the University, to find the Plaintiff responsible, used inflammatory racial and derogatory language in identifying the Plaintiff.

65.     Defendants knowingly and intentionally deprived Plaintiff of his fundamental right to meaningfully participate in the University's Title IX process despite the knowledge that such allegations could lead to a life altering sanction.

66.     Defendants knowingly and intentionally forced Plaintiff into the predicament of having to either waive his Fifth Amendment right against self-incrimination, or decline to participate in the University's process thus leading to the inevitable finding of responsibility and University imposed sanctions.

### AS AND FOR A FIRST CAUSE OF ACTION
### 42 U.S.C. §1983: Denial of Fourteenth Amendment Procedural Due Process
#### (Against All Defendants)

67.     Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

68.     Upon information and belief, Chancellor Blank is the University official responsible for hiring and overseeing the work of Title IX Coordinator Lauren Hasselbacher and Director of the Office of Compliance Cathy Trueba.

69.     Upon information and belief, Defendant Hasselbacher, as the University's Title IX Coordinator, is responsible for overseeing and implementing the policies and procedures identified in the University of Wisconsin-Madison Policy on Sexual Harassment and Sexual Violence and the University of Wisconsin System Chapter 17: Student Non-Academic Disciplinary Procedures (collectively, the "Policies").

70.     The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

71.     In this case, the individual Defendants are state actors subject to the Fourteenth Amendment.

72.     Section 1983 of Title 42 of the U.S. Code provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

73.     A person has a protected liberty interest in his good name, reputation, honor and integrity, of which he cannot be deprived without due process.

74.     A person has a protected property interest in pursuing his education, as well as in future educational and employment opportunities and occupational liberty, of which he cannot be deprived without due process.

75.     Plaintiff's constitutionally protected property interest in his continued enrollment at University of Wisconsin-Madison and his right to complete his degree were violated by Defendants' actions.

76.     Plaintiff has a constitutional right to be free from arbitrary disciplinary action that may result in his separation from the University. This right arises from the policies, courses of conduct, practices and understandings established by the University and by the Fourteenth Amendment.

77.     Plaintiff's constitutionally protected property interest further arises from the express and implied contractual relationship between the University and Plaintiff.

14

78.     It is well established that Fourteenth Amendment due process protections are required in higher education disciplinary proceedings.

79.     A person who has been admitted to a public university has a protected property interest in continuing his education at that university until he has completed his course of study. The state cannot deprive a person of that interest without due process.

80.     As a result, if Plaintiff, as a University of Wisconsin-Madison student, faced disciplinary action that included the possibility of suspension or dismissal if found responsible for alleged sexual misconduct, then the Due Process provisions of the Fourteenth Amendment to the United States Constitution apply to the disciplinary process carried out by the University.

81.     The University of Wisconsin-Madison, a state university, is a part of the University of Wisconsin System, with its principal administrative offices in Madison, Wisconsin. The University has a duty to provide its students equal protection and due process of law by and through any and all procedures set forth by the University.

82.     Plaintiff has obeyed all institutional rules and is therefore entitled to a process commensurate with the seriousness of the allegations and the potential discipline, sanctions, and repercussions he is facing. The allegations in this case could have lifelong ramifications for Plaintiff.

83.     Thus, at a minimum, Plaintiff was entitled to notice of the charges against him and a meaningful opportunity to be heard.

84.     Indeed, the UW-Madison Policy on Sexual Harassment and Sexual Violence (the "Policy") guarantees that University officials responding to a complaint of sexual misconduct will "resolve the matter in a prompt and equitable manner in accordance with the applicable

procedures, taking into consideration the nature and complexity of the report and **procedural due process requirements**." (emphasis added)

85.     Nonetheless, since the initiation of the investigation, Defendants have flagrantly violated Plaintiff's clearly established rights under the Due Process Clause of the Fourteenth Amendment through its deprivation of the minimal requirements of procedural fairness.

86.     Defendant Hasselbacher is aware that a criminal matter against Plaintiff is currently ongoing. Defendant Hasselbacher is further aware that the criminal charges arise from the same alleged events and involve the same parties as the University's Title IX case.

87.     Moreover, Defendant Hasselbacher is aware that germane evidence to this investigation exists and is in the hands of the Dane County District Attorney's Office and said evidence will not be available to the University until after Plaintiff's criminal proceeding.

88.     Notwithstanding, Defendants have elected to proceed forward with the Title IX matter, without the benefit of critical evidence that goes to the heart of the allegations.

89.     In addition, by proceeding with the investigation, Defendant Hasselbacher is knowingly, and unconstitutionally, forcing the Plaintiff to either waive his Fifth Amendment right against self-incrimination or risk the unfavorable outcome that will likely result should he fail to participate in the University proceeding.

90.     The University of Wisconsin has deprived Plaintiff of the requisite due process because the University is facing both internal and external pressure to aggressively handle cases against male students accused of misconduct, and to find Plaintiff in particular responsible for the allegations.

91.     In doing so, the Defendants subjected Plaintiff to an insufficient process when they failed to provide Plaintiff a reasonable opportunity to defend himself by proceeding with an investigation despite their knowledge that Plaintiff would be restricted from fully participating.

92.     As a result, Defendants failed to provide Plaintiff with the basic due process protections that they are required to provide students accused of sexual misconduct at a state school.

93.     Defendants, as well as other agents, representatives, and employees of the University of Wisconsin-Madison, were acting under color of state law when they showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.

94.     Defendants all agreed to, approve, and ratify this unconstitutional conduct as described above.

95.     Accordingly, Defendants are liable to Plaintiff in violation of 42 U.S.C. § 1983 for violations of the Due Process Clause of the Fourteenth Amendment, and for all damages arising therefrom.

96.     As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress; loss of educational, athletic and non-athletic career opportunities; economic injuries; and other direct and consequential damages.   Plaintiff's interests in the results of the disciplinary process are significant.

97.     Defendants' conduct as described herein was malicious, reckless, and/or callously indifferent to Plaintiff's rights such that Plaintiff is entitled to an award of punitive damages. As a result of the foregoing, Plaintiff's damages are an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages,

damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, together with punitive damages, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements and an injunction staying the remainder of the University disciplinary proceeding pending the outcome of the related criminal matter.

**AS AND FOR A SECOND CAUSE OF ACTION**
**Violation of the Equal Protection Clause of the Fourteenth Amendment**
**(Against all Defendants)**

98.     Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

99.     The Fourteenth Amendment to the United States Constitution provides in pertinent part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

100.     The allegations hereinabove demonstrate that Defendants violated Plaintiff's procedural due process rights, in violation of the Fourteenth Amendment and, therefore, 42 U.S.C. § 1983.

101.     As a result of the foregoing, Plaintiff is entitled to a judgment against University of Wisconsin awarding Plaintiff an injunction against further violations of the United States Constitution in the process of investigating and adjudicating sexual misconduct complaints, including Plaintiff's, and, against the individual defendants in their personal capacities, damages, including punitive damages, in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation,

past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**AS AND FOR A THIRD CAUSE OF ACTION**
**42 U.S.C. §1981: Discrimination Based on Race**
**(Against Defendants Hasselbacher, Trueba and Blank)**

102.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

103.    The Civil Rights Act of 1964, 42 U.S.C. Section 1981 prohibits discrimination based on race, as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

104.    The phrase "to make and enforce contracts" refers to the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C.A. § 1981 (West).

105.    The University of Wisconsin's Office of Compliance guarantees that the "University of Wisconsin-Madison is committed to providing equal opportunity and equal access in compliance with all applicable federal and state laws and regulations and University of Wisconsin System and university non-discrimination policies and procedures, including but not limited to Title VI of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color, and national origin, Title IX of the Education Amendments of 1972, which prohibits discrimination on the basis of sex, Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990, which prohibit discrimination on the basis of disability, and the Age Discrimination Act of 1975, which prohibits discrimination on the basis of age."

106.     Further, the University's Regent Policy Document 14-6: Discrimination, Harassment, and Retaliation provides as follows:

> No student may be denied admission to, or participation in or the benefits of, or be discriminated against in any service, program, course or facility of the UW System or its institutions on the basis of race, color, creed, religion, age, sex, sexual orientation, gender identity or expression, national origin, ancestry, disability, pregnancy, marital or parental status, or any other category protected by law, including physical condition or developmental disability as defined in Wisconsin Statutes §51.01(5).

107.     Plaintiff entered into a contract with the University when he enrolled as a student and paid the required tuition and fees. The educational contract formed between Plaintiff and the University includes all policies and procedures, such as those noted above.

108.     Notwithstanding, Defendant Hasselbacher discriminated against Plaintiff based on his race when she proceeded to issue the Initial Investigative Report prior to conducting an interview with Plaintiff, in response to pressure imposed by Complainant 1's father, a prominent Chicago attorney and alumnus of the University.

109.     Defendant Hasselbacher further discriminated against Plaintiff based on his race when she proceeded to issue the Initial Investigative Report despite Plaintiff's requests that the Title IX matter be stayed pending the resolution of the criminal matter, at the insistence of Complainant 1's father who outwardly expressed a racial bias against Plaintiff, a black male athlete.

110.     Defendant Hasselbacher's decision to proceed with the investigation in which Plaintiff was restricted from fully participating, and would thus likely be found responsible and harshly sanctioned was in direct response to the pressure imposed by Complainant 1's father.

111.    Upon information and belief, at the end of July 2018, Complainant 1's father attended a meeting with Defendants Hasselbacher and Trueba, during which he engaged in a heated and racist rant concerning Plaintiff.

112.    Not surprisingly, within a few days thereafter, Defendant Hasselbacher suddenly began interviewing witnesses and the complainants, despite the lack of action on the complaints that had been filed nearly three months earlier.

113.    Defendant Hasselbacher's actions were motivated by racial animus and were taken in malicious, willful, wanton, deliberate indifference to, and reckless disregard of Plaintiff's rights as guaranteed by 42 U.S.C. § 1981.

114.    As a direct, foreseeable and proximate result of Defendants' intentional illegal racial discrimination, Plaintiff has suffered damages, including punitive damages, in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

(i)     on the first cause of action for violation of constitutional due process under 42 U.S.C. § 1983, a judgment against the individual defendants  awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, punitive damages, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements and, against all Defendants, an injunction  enjoining violations of the Fourteenth Amendment in the process of investigating and adjudicating sexual misconduct complaints;

(ii)     on the second cause of action for violation of the  Equal Protection Cause of  the Fourteenth Amendment to the United States Constitution under 42 U.S.C. § 1983, a judgment against all Defendants awarding Plaintiff an injunction against violations of the United States Constitution in the process of investigating and adjudicating sexual misconduct complaints and, against the individual Defendants, damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus punitive damages, prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iii)    on the third cause of action for discrimination based on race under 42 U.S.C. § 1981, a judgment against all Defendants awarding Plaintiff an injunction against violations of the United States Constitution in the process of investigating and adjudicating sexual misconduct complaints and, against the individual Defendants, judgment against the individual defendants awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, punitive damages, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iv)     a stay of all University disciplinary proceedings against Plaintiff pending the resolution of the related criminal matter; and

(v)      awarding Plaintiff such other and further relief as the Court deems just, equitable and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury of all issues presented herein that are capable of being tried by a jury.

**Dated:   New York, New York**
**October 9, 2018**

Respectfully submitted,

Nesenoff & Miltenberg LLP

By: /s/Andrew T. Miltenberg (*pro hac vice pending*)
Stuart Bernstein (*pro hac vice pending*)
Tara J. Davis (*pro hac vice pending*)
363 Seventh Avenue, 5th Floor

New York, New York 10001
212-736-4500 (telephone)
212-736-2260 (fax)
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
tdavis@nmllplaw.com

and

Cross Law Firm, S.C.

By: /s/ Nola J. Hitchcock Cross
Attorneys for Plaintiff
845 N 11th Street
Milwaukee, Wi. 53233
414-224-0000 (telephone)
414-273-7055 (fax)

*Attorneys for Plaintiff Quintez Cephus*