IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

QUINTEZ CEPHUS,

Plaintiff,

v. Case No. 18-cv-832

BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM, LAUREN HASSELBACHER, in her individual and official capacity, CATHY TRUEBA, in her individual and official capacity, and REBECCA BLANK, in her individual and official capacity,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF QUINTEZ CEPHUS'S MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR EXPEDITED CONSIDERATION**

## INTRODUCTION

Plaintiff Quintez Cephus ("Plaintiff") moves for a Preliminary Injunction enjoining the University of Wisconsin-Madison (the "University") from proceeding with its Title IX disciplinary investigation concerning allegations made against Plaintiff pending the resolution of a concurrent criminal matter. Given the criminal case involves the same facts and arises from the same alleged events that prompted the University Title IX investigation against Plaintiff, permitting the University to continue with their disciplinary process while the criminal case is ongoing would severely and irreparably harm Plaintiff. Specifically, Plaintiff will be forced to choose whether to invoke his Fifth Amendment right against self-incrimination in the institutional proceeding and risk the inevitable finding of responsibility and accompanying sanctions, or waive his Fifth Amendment right in the institutional proceeding despite the

potential damage to his criminal defense. On the other hand, staying the University Title IX investigation pending a resolution of the criminal matter will not result in prejudice to any interested party.

Plaintiff requests expedited consideration given the status of the University's investigation. Should Plaintiff be unable to fully and meaningfully participate in the University's hearing process, he will inevitably be found responsible for violations of the University's policies, thus causing additional irreparable harm.

**THE PARTIES**

1. Plaintiff is a natural person and a resident of the state of Georgia.

2. Defendant Board of Regents of the University of Wisconsin System consists of 18 members who are responsible for establishing policies and rules that govern the University System. It is governed by Chapter 36 of the Wisconsin Statutes.

3. Defendant Lauren Hasselbacher ("Defendant Hasselbacher") is a natural person and, upon information and belief, a resident of the State of Wisconsin. Defendant Hasselbacher was the Title IX Coordinator of the University of Wisconsin-Madison at all relevant times herein.

4. Defendant Cathy Trueba ("Ms. Trueba") is a natural person and, upon information and belief, a resident of the State of Wisconsin. Ms. Trueba was the Director of the Office of Compliance at the University of Wisconsin-Madison at all relevant times herein. Ms. Trueba was responsible for overseeing the University's compliance with Title IX and allegations of discrimination.

5. Defendant Rebecca Blank ("Ms. Blank") is a natural person and, upon information and belief, a resident of the State of Wisconsin. Ms. Blank was the Chancellor of the University of Wisconsin-Madison at all relevant times herein. As Chancellor, she was

responsible for implementing the policies and procedures pursuant to which the investigation against Plaintiff was to be carried out.

**JURISDICTION AND VENUE**

6. This Court has federal question and diversity jurisdiction pursuant to 28 U.S.C. § 1331 and § 1332 because (i) the federal law claims arise under the constitution and statutes of the United States; and (ii) Plaintiff and Defendants are citizens of different states.

7. This Court has personal jurisdiction over Defendant Board of Regents on the ground that it is conducting business within the State of Wisconsin.

8. This Court has personal jurisdiction over Defendant Hasselbacher on the ground that she was employed by University of Wisconsin-Madison as Title IX Coordinator at all relevant times herein.

9. This Court has personal jurisdiction over Defendant Trueba on the ground that she was employed by University of Wisconsin-Madison as Director of the Office of Compliance at all relevant times herein.

10. This Court has personal jurisdiction over Defendant Blank on the ground that she was employed by University of Wisconsin-Madison as Chancellor at all relevant times herein.

**FACTS**

11. Plaintiff, an African American male, was recruited by the University of Wisconsin-Madison football team, with the class of 2020. *See* Affidavit of Plaintiff Quintez Cephus in Support of Motion for Preliminary Injunction and Request for Expedited Consideration, ¶ 7 (hereinafter "Cephus Aff.")

12. He matriculated at the University in June of 2016, at which time the University provided him with the policies and procedures related to academic and non-academic misconduct. Cephus Aff., ¶ 9.

13. On the evening of April 21 into the morning of April 22, 2018, Plaintiff engaged in consensual sexual activity with fellow University of Wisconsin students, Complainant 1 and Complainant 2. Cephus Aff., ¶ 10.

14. Complainants 1 and 2 are Caucasian females. Cephus Aff., ¶ 10.

15. On the afternoon of April 22, 2018 officers from the Madison Police Department executed a search warrant of Plaintiff's apartment, stemming from allegations concerning the events of the previous evening. Cephus Aff., ¶ 11.

16. On April 26, 2018 the University's Athletics Department immediately suspended Plaintiff from the football team when it learned from Defendant Hasselbacher that criminal charges were imminent. Cephus Aff., ¶ 12.

17. Over a month after his suspension from the University's football team, on May 29, 2018, Plaintiff was notified by the University of Wisconsin-Madison's Title IX Coordinator Lauren Hasselbacher ("Defendant Hasselbacher") that the University's Office of Compliance received information alleging that he violated the University's Administrative Code, UWS Chapter 17. Cephus Aff., ¶ 16.

18. Specifically, it was alleged that on or around April 22, 2018, he engaged in sexual activity with fellow University of Wisconsin students, Complainant 1 and Complainant 2, while they were incapacitated and thus unable to consent. Cephus Aff., ¶¶ 16-18.

19. Defendant Hasselbacher requested that Plaintiff contact her to schedule a meeting during which he could respond to the allegations. Cephus Aff., ¶ 18.

20. In or about May of 2018, Plaintiff also learned that the Dane County District Attorney was investigating charges against him arising from the same events. *See* Declaration of Stephen J. Meyer, Esq. in Support of Plaintiff's Motion for Preliminary Injunction and Request for Expedited Consideration, ¶ 3 (hereinafter "Meyer Decl.")

21. Plaintiff's criminal attorney Stephen Meyer was in constant contact with the Dane County District Attorney's office regarding their investigation since that time. Meyer Decl., ¶ 4.

22. He provided them with security footage from the night in question from the Plaintiff's apartment. Meyer Decl., ¶ 5.

23. Mr. Meyer in fact showed the same video to Defendant Hasselbacher. Meyer Decl., ¶ 6.

24. On August 17, 2018 Plaintiff was advised that the Dane County District Attorney's Office would be criminally charging him surrounding his April 21-22, 2018 consensual encounter with Complainants 1 and 2. Cephus Aff., ¶ 32; Meyer Decl., ¶ 18.

25. Plaintiff's criminal matter is moving along expeditiously with his arraignment before The Honorable William Hanrahan, the Chief Judge of the State's Fifth Judicial Administrative District, set for October 11, 2018. Cephus Aff., ¶ 46; Meyer Decl., ¶ 19.

26. Nearly four months after being advised that he was being investigated for potential policy violations related to the incident, and only after the Dane County District Attorney's Office decided to bring charges against the Plaintiff, Plaintiff became aware that Defendant Hasselbacher intended to issue her initial investigation report no later than August 31, 2018, even though he had not yet been interviewed by the University. Cephus Aff., ¶ 34.

27. As a result of the Dane County District Attorney's decision to proceed with charges, by letter dated August 23, 2018, the undersigned counsel advised Defendant Hasselbacher that Plaintiff would now be constrained from participating in the University's Title IX proceeding while a concurrent criminal prosecution was pending, and that requiring him to do so would infringe upon his Fifth Amendment rights. *See* Cephus Aff., ¶¶ 35-36 and Exhibit A thereto.

28. Moreover, as significant, critical, and potentially exculpatory evidence would become available over the next few months through discovery in the criminal proceeding, counsel advised Defendant Hasselbacher that the collection of such evidence would likewise be critical to the Title IX proceeding, further warranting a stay of the University's process until the criminal matter was resolved. *See* Cephus Aff., ¶¶ 35-36 and Exhibit A thereto.

29. Mr. Raymond P. Taffora, Vice Chancellor for Legal Affairs for the University responded by letter dated August 30, 2018 misconstruing Plaintiff's counsel's letter of August 23 as "a refusal to participate in the University's Title IX investigation while the criminal process is ongoing." *See* Cephus Aff., ¶¶ 37-38 and Exhibit B thereto.

30. Besides misstating Plaintiff's position, Mr. Taffora acknowledged that the University attempted to obtain potentially relevant and germane information from the Dane County District Attorney's Office. *See* Cephus Aff., ¶¶ 37-38 and Exhibit B thereto.

31. However, the University was advised "that the District Attorney's Office will not provide the University access to additional information prior to the resolution of the criminal proceeding." Cephus Aff., ¶ 38.

32. Moreover, Mr. Taffora wrote "UW-Madison strives to provide a fair and impartial investigation in a timely matter and will consider **available** information. That being said, the University's process is separate from the criminal process, has different legal requirements, has different potential consequences and **is expected to move more swiftly** than criminal proceedings. Accordingly, the University **will not delay the conclusion of its Title IX process until the resolution of the concurrent criminal proceedings**." (Emphasis added.) Cephus Aff., ¶ 38.

33. The following day, August 31, 2018 the Initial Investigative Report (the "Report") was issued by Defendant Hasselbacher. Cephus Aff., ¶ 39.

34. Incredibly, the Report failed to include the substantial evidence obtained to date in relation to the criminal matter, despite Plaintiff's repeated requests that this critical information be included in the University's investigation. Cephus Aff., ¶ 39.

35. The Report did however include the highly prejudicial, one sided inflammatory criminal complaint, statements from six witnesses, in addition to the two Complainants, none of which Plaintiff was able to directly respond to prior to issuance of the Report in light of the criminal proceeding. Cephus Aff., ¶ 40.

36. On September 14, 2018, Plaintiff submitted a brief procedural response to the Report, highlighting the failure to include exculpatory evidence, addressing his inability to speak freely, and again requesting that the University stay their investigation pending the conclusion of the ongoing criminal matter. Cephus Aff., ¶ 41.

37. On September 21, 2018, Defendant Hasselbacher issued a Draft Amended Initial Investigative Report. Cephus Aff., ¶ 42.

38. On September 25, 2018, Plaintiff submitted a brief procedural response to the Amended Initial Investigative Report, again highlighting the failure to include exculpatory evidence, addressing his inability to speak freely, and once again requesting that the University stay their investigation pending the conclusion of the ongoing criminal matter. Cephus, Aff., ¶43.

39. On October 2, 2018, Defendant Hasselbacher issued a Second Amended Initial Investigative Report. Cephus Aff., ¶ 44.

40. On October 7, 2018, for the third time, Plaintiff submitted a brief procedural response to the Second Amended Initial Investigative Report, highlighting the failure to include exculpatory evidence, addressing his inability to speak freely, and once again requesting that the University stay their investigation pending the conclusion of the ongoing criminal matter. Cephus Aff., ¶ 45.

41. On October 9, 2018, Plaintiff received an email from Defendant Hasselbacher which stated in part as follows:

> I'm writing to inform you that I've provided the Final Investigative Report to the Office of Student Conduct and Community Standards (OSCCS) for decision making. Assistant Dean Tonya Schmidt, the Director of OSCCS, is copied on this email. Upon receiving the report, Assistant Dean Schmidt will assign the report to an investigating officer for decision-making; in this instance that person will be Assistant Dean Ervin Cox, also copied.
>
> If you have questions about the status of the report, you can contact me or Dean Cox. **Otherwise, the next communication you receive will likely be the Finding Letter.** (emphasis in original).

*See* Declaration of Andrew T. Miltenberg, Esq. in Support of Plaintiff Quintez Cephus's Motion for Preliminary Injunction and Request for Expedited Consideration, ¶ 8.

42. To date, all of Plaintiff's requests to stay the Title IX proceedings have been denied and the University's Title IX investigation is still moving forward toward a resolution.

## ARGUMENT

### I. Legal Standard

In *Harlan v. Scholz*, the Seventh Circuit described the standard for a preliminary injunction as follows:

> In order to obtain a preliminary injunction, a plaintiff must show three things: (1) without such relief, he will suffer irreparable harm before his claim is finally resolved; (2) he has no adequate remedy at law; and (3) he has some likelihood of success on the merits. *Harlan v. Scholz*, 866 F.3d 754, 758 (7th Cir. 2017).

If the moving party is able to establish the foregoing, "the court must then weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one. In addition, the court must ask whether the preliminary injunction is in the public interest." *Id.* at 758 (7th Cir. 2017) (internal citations omitted). In weighing the applicable factors, the Court should employ a "sliding scale" approach: "the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is

the plaintiff will succeed, the more the balance need weigh towards its side." This analysis is a "subjective and intuitive" one which permits the court to "weigh the competing considerations and mold appropriate relief." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992) (internal citations omitted). For the reasons outlined below, Plaintiff is entitled to preliminary injunctive relief.

**II. Plaintiff will suffer irreparable harm absent such relief.**

It is irrefutable that should the University's Title IX investigation proceed while a concurrent criminal action is pending, Plaintiff will be substantially and irreparably harmed. Specifically, he will be either forced to waive his Fifth Amendment right against self-incrimination by participating in interviews with the University, potentially damaging his criminal defense or, alternatively, if he chooses to invoke his Fifth Amendment right in the University proceeding, adverse inferences will likely be drawn against him leading to a probable finding of responsibility and severe sanctions such as expulsion. Moreover, as a public university, the University of Wisconsin-Madison is obligated to provide its students equal protection and due process of law by and through any and all procedures set forth by the University. At a minimum, Plaintiff is entitled to a meaningful opportunity to be heard and the ability to defend himself against these charges.

In choosing to move forward with the investigation despite Defendants' knowledge that a related criminal matter is restraining Plaintiff from participating to the fullest extent possible, Defendants are depriving Plaintiff of a meaningful opportunity to be heard, in violation of his fundamental rights. There is no question that "[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed." *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017). Accordingly, Plaintiff here has suffered, and will continue to suffer, irreparable injury

absent injunctive relief enjoining the University from moving forward with its investigation while a criminal matter is pending.

**III. Plaintiff has no adequate remedy at law.**

Plaintiff is also entitled to injunctive relief as he has no other adequate remedy at law. Should he be forced to either (1) waive his Fifth Amendment right against self-incrimination by participating in interviews with the University, potentially damaging his criminal defense or (2) invoke his Fifth Amendment right in the University proceeding, leading to the inevitable finding of responsibility and imposition of sanctions, he will suffer irreparable damage to his educational future and athletic career, for which monetary damages would be inadequate. *See Doe v. Univ. of Michigan*, 325 F. Supp. 3d 821 (E.D. Mich. 2018) (preliminary injunction warranted where "Plaintiff faces an immediate threat of expulsion, a penalty that could drastically curtail future educational and employment opportunities.")

Various courts around the country have recognized the existence of an irreparable harm, and the inadequacy of monetary relief, when a student is wrongly suspended or expelled from a school. *See, e.g., Doe v. Univ. of Michigan*, 325 F. Supp. 3d 821 (E.D. Mich. 2018) ("Money damages cannot compensate Plaintiff for the reputational harm he has already suffered and will continue to suffer as a consequence of sexual assault allegations."); *Boman v. Bluestem Unified Sch. Dist. No. 205*, 2000 WL 297167, at *3 (D. Kan. Jan. 28, 2000); *Ganden v. National Collegiate Athletic Association*, 1996 WL 680000, at *6-7 (N.D. Ill. Nov. 21, 1996)*; Doe v. Univ. of Cincinnati*, No. 1:15-CV-600, 2015 WL 5729328, at *3 (S.D. Ohio Sept. 30, 2015); *Byrnes v. Johnson Cty. Cmty. Coll.*, No. CIV.A. 10-2690-EFM, 2011 WL 166715, at *4 (D. Kan. Jan. 19, 2011); *King v. DePauw Univ.*, No. 2:14-cv-70, 2014 WL 4197507 at * 13 (S.D. Ind. Aug. 22, 2014) (plaintiff would "forever have either a gap or a senior-year transfer on his record" for which "any explanation [to schools or employers] is unlikely to fully erase the stigma"); *Doe*

*v. Middlebury Coll.*, No. 1:15-CV-192-JGM, 2015 WL 5488109, at *3 (D. Vt. Sept. 16, 2015) (money damages cannot compensate for the loss of his senior year in college with his class, the delay in the completion of his degree, or the opportunity to begin his career in July 2016 with particular employment; further, "Plaintiff would have to explain, for the remainder of his professional life, why his education either ceased prior to completion or contains a gap"); *Marshall v. Ohio Univ.*, No. 2:15-CV-775, 2015 WL 1179955, at *9 (S.D. Ohio Mar. 13, 2015) ("Plaintiff will forever have this disciplinary action on his academic record, which may impact his ability to enroll at another institution, or affect his future career possibilities").

For the same reasons, if Plaintiff here is ultimately sanctioned as a result of his inability to meaningfully participate in the University's process, monetary damages will not be able to adequately compensate him.

## IV. Plaintiff is likely to succeed on the merits of his claim.

Plaintiff is also entitled to injunctive relief because he is likely to succeed on the merits of his claims. At this stage, Plaintiff need only demonstrate some likelihood that he will prevail on the merits of his claims, not that he will definitely prevail. *See Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir. 1992). In other words, Plaintiff must show that his chances of succeeding are "better than negligible." *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018).

### a. <u>42 U.S.C. §1983: Denial of Fourteenth Amendment Procedural Due Process</u>

Plaintiff has demonstrated a substantial likelihood of success on his 42 U.S.C. § 1983 Procedural Due Process claim. As outlined in the Complaint, Section 1983 of Title 42 of the U.S. Code provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

> jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

When Plaintiff, a student of a public university, was faced with disciplinary action that could result in his removal from campus, the University was obligated to comply with the Due Process provisions of the Fourteenth Amendment which requires, at a minimum, notice and a meaningful opportunity to be heard. In proceeding with their investigation despite their knowledge that a concurrent criminal matter restricts Plaintiff's ability to participate, Defendants have violated Plaintiff's fundamental right to due process.

Since the initiation of its investigation, the University has been aware that a criminal matter stemming from the same events is ongoing. (Circuit Court Dane County, 2018CF001694). In fact, the University's Initial Investigative Report inexplicably attaches a copy of the Criminal Court Complaint. Despite Plaintiff's numerous requests that the University halt its proceedings until the criminal matter is resolved, the University has moved forward with its investigation. Defendant Hasselbacher issued the Initial Investigative Report on August 31, 2018, which Plaintiff was required to respond to by September 14, 2018. Again, addressing the limitations imposed on him by the pending criminal investigation, Plaintiff responded to the Report to the fullest extent possible by pointing out the procedural failures in the investigation to date. For instance, while acknowledging the existence of additional, potentially exculpatory evidence such as security camera footage and toxicology reports obtained by the Madison Police Department and Dane County District Attorney, Defendant Hasselbacher failed to adequately, and impartially, address such evidence in the Report. Her inability to pursue all available and relevant evidence, along with the decision to move forward with the University's process despite Plaintiff's inability to participate, demonstrates a clear intention to steer this matter to a finding of responsibility and sanctions against Plaintiff.

In depriving Plaintiff of the opportunity to meaningfully participate in the Title IX disciplinary proceeding, Defendants, acting under color of state law, have flagrantly violated Plaintiff's procedural due process rights. Accordingly, Plaintiff is likely to succeed on the merits of this claim.

### b. Violation of the Equal Protection Clause of the Fourteenth Amendment

Plaintiff is also likely to succeed on the merits of his second cause of action, violation of the Equal Protection Clause of the Fourteenth Amendment. The Fourteenth Amendment to the United States Constitution provides in pertinent part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

As discussed herein, Defendants have violated Plaintiff's procedural due process rights, in violation of the Fourteenth Amendment and, therefore, 42 U.S.C. § 1983. It is well established that a person has a protected property interest in pursuing his education, as well as in future educational and employment opportunities and occupational liberty, of which he cannot be deprived without due process. *Wroblewski v. City of Washburn*, 965 F.2d 452 (7th Cir. 1992) ("The concept of liberty protected by the due process clause has long included occupational liberty—the liberty to follow a trade, profession, or other calling") (internal citations omitted). Absent an injunction halting the University's disciplinary proceeding, Plaintiff's inability to participate in the investigation process will inevitably lead to a fining of responsibility and accompanying sanctions. Should the University enforce a sanction that either temporarily or permanently excludes Plaintiff as a result of his inability to participate in the

process, the University will deny Plaintiff the equal protections of the law. Consequently, Plaintiff is likely to succeed on the merits on his Equal Protection claim.

**c. <u>42 U.S.C. §1981: Discrimination Based on Race</u>**

Further, Plaintiff's request for injunctive relief should be granted on the grounds that he is also likely to succeed on the merits of his 42 U.S.C. § 1981 claim. The Civil Rights Act of 1964, 42 U.S.C. Section 1981 prohibits discrimination based on race, as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

When Plaintiff enrolled as a student at the University and paid all required tuition and fees, he entered into an educational contract with the University, the terms of which were laid out in the University's policies and procedures. *Fernandez v. Med. Coll. of Wisconsin, Inc.*, 201 Wis. 2d 215, 549 N.W.2d 792 (Ct. App. 1996) ("Wisconsin has recognized that a college's bulletin and student handbook can create a contractual relationship between the student and the college"). Among the terms included within the contract is the following provision, issued by the University of Wisconsin's Office of Compliance:

> University of Wisconsin-Madison is committed to providing equal opportunity and equal access in compliance with all applicable federal and state laws and regulations and University of Wisconsin System and university non-discrimination policies and procedures, including but not limited to Title VI of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color, and national origin, Title IX of the Education Amendments of 1972, which prohibits discrimination on the basis of sex, Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990, which prohibit discrimination on the basis of disability, and the Age Discrimination Act of 1975, which prohibits discrimination on the basis of age.

Notwithstanding, Defendant Hasselbacher discriminated against Plaintiff based on his race when she proceeded to issue the Initial Investigative Report prior to conducting an interview with Plaintiff and declined to stay the disciplinary proceeding despite the pending criminal matter. Such actions were taken in response to pressure imposed by Complainant 1's father, a prominent Chicago attorney and alumnus of the University, who outwardly expressed a racial bias against Plaintiff, a black male athlete. Upon information and belief, at the end of July 2018, Complainant 1's father attended a meeting with Defendants Hasselbacher and Trueba, during which he engaged in a heated and racist rant concerning Plaintiff. Shortly thereafter, Defendant Hasselbacher suddenly began interviewing witnesses and the complainants, despite the lack of any action on the complaints that had been filed nearly three months earlier. Accordingly, Defendant Hasselbacher's actions were motivated by racial animus and were taken in malicious, willful, wanton, deliberate indifference to, and reckless disregard of Plaintiff's rights as guaranteed by 42 U.S.C. § 1981, and Plaintiff is therefore likely to succeed on the merits of this claim.

## V. A balancing of the harms weighs in favor of Plaintiff.

A balancing of the harm Plaintiff would suffer absent injunctive relief against the harm Defendants would incur should the requested relief be granted unquestionably weighs in favor of Plaintiff. The Title IX Office elected to wait nearly four months after being notified of the complaint before first requesting that Plaintiff appear for an interview, suggesting a lack of urgency. Notably, in addressing the timing of resolution of complaints, the University's Policies specifically acknowledge that the University will endeavor to resolve complaints in a prompt and equitable manner, "taking into consideration the nature and complexity of the report and ***procedural due process requirements***." Further, the September 2017 Questions and Answers on Campus Sexual Misconduct, issued by the United States Department of Education's Office for

Civil Rights advises **"[t]here is no fixed time frame under which a school must complete a Title IX investigation."** [1] **(Emphasis added).** Plaintiff's criminal matter is moving along expeditiously with his arraignment before The Honorable William Hanrahan, the Chief Judge of the State's Fifth Judicial Administrative District, set for October 11, 2018. Should the University's Title IX proceedings continue, if Plaintiff is ultimately found responsible for the alleged violations, such a finding would greatly prejudice him with the potential pool of jurors selected to hear his criminal case. Given the local and national media coverage this matter has garnered to date, a finding of responsibility by the University would undoubtedly become public knowledge and would therefore preclude Plaintiff from having his case heard before an impartial jury.

Further, though the Complainants in the University disciplinary matter, who are not named parties to this action, may have an interest in seeing their complaints resolved expeditiously, any such concern is substantially outweighed by the prejudice that would result to Plaintiff should the University proceeding move forward while he is unable to meaningfully participate. Thus, there is similarly no prejudice to the any of the parties involved in this matter. To the contrary, the injunctive relief requested would benefit all parties as the evidence obtained through the criminal proceeding may be critical to the University proceeding, as explicitly acknowledged by the University's Vice Chancellor for Legal Affairs in his August 30, 2018 letter.

Regardless of any independent desire of the University to expedite this matter to a conclusion, the potential ramifications to Plaintiff with respect to his educational and athletic future are severe. Specifically, if Plaintiff is unable to fully participate in the process and respond

---

[1] Available at https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf

to the allegations against him, a finding of responsibility- and imposition of a temporary or permanent separation from the University- is all but inevitable. Such an outcome would derail Plaintiff's ability to continue his education, either at the University or elsewhere, as well as his opportunity to establish a career in the National Football League, for which he is considered a top prospect. While the University has an institutional interest in quickly resolving disciplinary charges and maintaining confidence in the integrity of its processes, Plaintiff would suffer a far more substantial and concrete injury if an injunction is wrongly withheld than the University will suffer if the injunction is wrongly granted.

Based on the foregoing, the potential prejudice to Plaintiff should the University fail to stay its proceeding far outweighs any harm to Complainants or the University that may result from the issuance of the requested relief.

**VI. The requested injunctive relief is in the public interest.**

Granting a preliminary injunction enjoining the University from moving forward with their disciplinary investigation while a concurrent criminal matter is pending will serve the public interest. There are serious doubts surrounding the legitimacy of Defendants' actions in disciplining Plaintiff. Plaintiff does not pose a threat to others. The public, including both current and potential students of the University, certainly have an interest in seeing that the University's disciplinary procedures are fairly and properly applied, and that their constitutional rights will be protected. Thus, the public interest would best be served by halting the University's proceeding until such time as Plaintiff is able to fully and meaningfully participate in the process. The public interest should favor ensuring that a student of a public university is not deprived of his educational opportunities without due process of law, or forced to waive his constitutional rights.

**VII. This matter is ripe for review.**

For the reasons articulated by the District Court in *Doe v. University of Michigan,* this matter is ripe for judicial review, and injunctive relief warranted, because (1) Plaintiff is presently without sufficient constitutional protections; (2) the Court is in a position at this stage to determine whether Plaintiff's procedural due process rights are being protected; and (3) if the Court ultimately finds that Plaintiff was deprived of his right to meaningfully defend himself in the Title IX proceeding, he will have been subjected to a serious finding of sexual misconduct without appropriate constitutional safeguards. Further, "he has already suffered injury—sexual assault allegations may " 'impugn [his] reputation and integrity, thus implicating a protected liberty interest.' " *Doe v. Univ. of Michigan*, 325 F. Supp. 3d 821 (E.D. Mich. 2018) (internal citations omitted). Based on the foregoing, and given the status of the University Title IX disciplinary proceeding, this matter is presently ripe for judicial review.

**CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Injunctive Relief, enjoining the University of Wisconsin-Madison from pursing its Title IX investigation against Plaintiff until the related criminal matter pending in the Dane County Circuit Court under case number 2018CF001694 is fully and finally resolved.

**Dated: New York, New York**
**October 9, 2018**

Respectfully submitted,

Nesenoff & Miltenberg LLP

By: /s/Andrew T. Miltenberg (*pro hac vice pending*)
Stuart Bernstein (*pro hac vice pending)*
Tara J. Davis (*pro hac vice pending*)
363 Seventh Avenue, 5th Floor
New York, New York 10001
212-736-4500 (telephone)
212-736-2260 (fax)

amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
tdavis@nmllplaw.com

and

Cross Law Firm, S.C.

By: /s/ Mary C. Flanner
Mary C. Flanner (1013095)
Nola J. Hitchcock Cross (1015817)
Attorneys for Plaintiff
845 N 11th Street
Milwaukee, Wi. 53233
414-224-0000 (telephone)
414-273-7055 (fax)
mflanner@crosslawfirm.com
njhcross@crosslawfirm.com

*Attorneys for Quintez Cephus*