IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

QUINTEZ CEPHUS,

        Plaintiff,

        v.                       Case No. 18-CV-832

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN
SYSTEM, ET AL,

        Defendants.

---

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

---

BRAD D. SCHIMEL
Wisconsin Attorney General

s/Anne M. Bensky
ANNE M. BENSKY
Assistant Attorney General
State Bar #1069210

BRANDON T. FLUGAUR
Assistant Attorney General
State Bar #1074305

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-9451 (Bensky)
(608) 266-1780 (Flugaur)
benskyam@doj.state.wi.us
flugaurbt@doj.state.wi.us

TABLE OF CONTENTS

INTRODUCTION ...........................................................................................3

    A.    The Complaint's allegations .................................................5

    B.    UW student non-academic misconduct procedures .............6

SUMMARY OF THE ARGUMENT .....................................................9

ARGUMENT ............................................................................... 11

   I.    The entire Complaint must be dismissed for failure to state a claim. ............................................................................. 11

    A.    Legal Standard ..................................................... 11

    B.    Cephus's due process claim fails because he was provided and continues to be provided constitutional due process. ........................................................ 12

    C.    The Complaint fails to state an equal protection claim because there is no allegation that Cephus was treated differently than any other student subject to a Title IX investigation. ....................................................... 29

    D.    The Complaint fails to state a claim for race discrimination. .................................................... 32

    E.    Trueba and Blank must be dismissed for lack of personal involvement............................................. 36

   II.    Cephus is not entitled to a preliminary injunction because the Court should abstain under *Younger v. Harris*, and because he fails to meet the elements required for injunctive relief. .......................................................................... 38

    A.    The Court should abstain from interfering with the State's administrative proceeding pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). ............... 38

CONCLUSION................................................................................ 47

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

QUINTEZ CEPHUS,

       Plaintiff,

    v.                              Case No. 18-CV-832

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN
SYSTEM, ET AL,

       Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## INTRODUCTION

The University of Wisconsin-Madison (University) received a report that in the early morning of April 22, 2018, one of its students, Quintez Cephus, had allegedly sexually assaulted two other students. The University's Title IX Coordinator, Lauren Hasselbacher, opened an investigation, as did the Dane County District Attorney's office. In August 2018, Cephus was criminally charged and his case is proceeding according to Wisconsin's rules of criminal procedure. On October 8, 2018, Hasselbacher forwarded her final investigative report to the University's Office of Student Conduct & Community Standards

for a determination of whether Cephus was responsible or not responsible for violating one or more provisions of the UW System's nonacademic misconduct code. As of the filing of the Complaint in this case, the University had not issued a finding of responsibility.[1] On October 9, 2018, Cephus filed this lawsuit, asserting denial of due process, equal protection, and race discrimination, and asked this Court to enjoin further University disciplinary proceedings pending resolution of the criminal charges.

Cephus's Complaint should be dismissed for failure to state a claim and his Motion for a Preliminary Injunction should be denied. The due process claim is not ripe, as there are state administrative and statutory procedures still available to Cephus, and his federal claim nonetheless fails on the merits. The equal protection claim did not identify others, similarly situated, who were treated better than Cephus, which dooms his claim. The race discrimination allegation is predicated on alleged statements by a non-party and there is no plausible connection between the alleged racially biased statements and the Defendants' completion of an investigate report that both state and federal law mandate. Finally, Cephus's Motion for a Preliminary Injunction is not

---

[1] The University issued a decision on October 30, 2018, and provided it to Cephus. (DPFOF ¶ 3.) This decision is a student record that the University is not authorized to release under the Family Educational Rights and Privacy Act (FERPA). 20 U.S.C.A. § 1232g.

supported by law. It is barred by the *Younger*[2] abstention doctrine and the motion otherwise fails to meet the elements required before an injunction may issue.

Cephus's Complaint must be dismissed in its entirety and his Motion for a Preliminary Injunction must thus be denied.

### A.    The Complaint's allegations

Cephus's federal Complaint alleges that in April 2018, he engaged in consensual sexual activity with two University of Wisconsin students. The following day, the Madison Police executed a search warrant of his apartment, and on April 26, the Student Athlete Disciplinary Committee suspended him from the football team. (Dkt. 1 ¶¶ 24–26.) On May 29, 2018, Defendant Lauren Hasselbacher sent Cephus a Notice of Charge letter indicating the University received information alleging violations of student conduct rules that prohibit sexual activity with people who are unable to provide consent due to alcohol incapacitation. (Dkt. 1 ¶ 30.) The Dane County District Attorney's office was investigating the matter as well. (Dkt. 1 ¶¶ 36, 38.)

Throughout June, July, August, and September 2018, Cephus's attorney was in contact with Hasselbacher and others from the University as she worked on investigating the sexual misconduct allegations. (Dkt. 1 ¶¶ 33–40,

---

[2] *Younger v. Harris,* 401 U.S. 37 (1971).

42, 44, 52, 53, 56, 58, 60.) Hasselbacher and Defendant Cathy Trueba also meet with the father of one of the women who was allegedly assaulted. (Dkt. 1 ¶¶ 62–63.)

When the District Attorney notified Cephus's attorney, in August, 2018, it intended to file criminal charges, Cephus's attorney notified Hasselbacher that Cephus would be constrained from participating in the University proceedings because doing so could jeopardize his Fifth Amendment right against self-incrimination. (Dkt. 1 ¶¶ 45–46.) Around August 30, 2018, the University's Vice Chancellor for Legal Affairs wrote to Cephus's attorney explaining that the University's process is separate from the criminal process, that University disciplinary proceedings are expected to move swiftly, and that the University will not delay conclusion of its proceedings. (Dkt. 1 ¶ 53.) Thereafter, Hasselbacher issued three draft Initial Investigative Reports and shared them with Cephus's attorney for review and comment. On October 9, 2018, Hasselbacher forwarded her Final Investigative Report to the Office of Student Conduct and Community Standards for decision-making. (Dkt. 1 ¶¶ 54–61.)

## B.   UW student non-academic misconduct procedures

Wisconsin Admin. Code Ch. UWS 17 governs procedures the UW System schools, including UW-Madison, must adhere to when investigating and

6

adjudicating complaints of nonacademic misconduct by students[3]. When the University receives a complaint alleging nonacademic misconduct, it assigns an investigating officer to carry out the procedures outlined in the Chapter 17. If the complaint involves certain allegations, including but not limited to, sexual assault or sexual harassment, the Title IX Coordinator is notified.[4] Wisconsin Administrative Code § UWS 17.05 mandates that, in cases alleging sexual assault or sexual harassment, the Title IX Coordinator or his/her designee must conduct the investigation.[5]

The Title IX Coordinator contacts the accused student—referred to in Chapter 17 as the respondent—to provide notice and an opportunity to respond to the charges. If the respondent does not participate in the investigation, the University proceeds based on the information available. Wis. Admin. Code § UWS 17.11(2). Upon completion of the investigation, the Title IX Coordinator forwards a Final Investigative Report to the Office of Student Conduct &

---

[3] The University of Wisconsin System was created on October 11, 1971, by Chapter 100, Laws of 1971. It is made up of 13 four-year universities, 13 two-year branch campuses affiliated with seven of the four-year institutions, and the UW-Extension. The System serves more than 170,000 students each year and employs approximately 39,000 faculty and staff statewide. All System universities and campuses are bound by Chapter 36 of the Wisconsin Statutes and section UWS of the Wisconsin Administrative Code. *See* https://www.wisconsin.edu/about-the-uw-system/

[4] Title IX of the Education Amendments of 1972 prohibits sex discrimination at universities receiving federal funding. 20 U.S.C. § 1681.

[5] Title IX – Report for Investigation: Student, University of Wisconsin, Madison: https://compliance.wisc.edu/titleix/campus-procedures/reporting/complainant/student/student/ (last visited Oct. 30, 2018).

Community Standards for a determination of responsible or not responsible within the parameters of Chapter 17. (Dkt. 1 ¶ 61.) If the investigating officer determines that nonacademic misconduct occurred, a sanction is recommended and the respondent is provided notice of hearing rights. Wis. Admin. Code § UWS 17.11(4). In cases where suspension or expulsion is recommended, the University automatically schedules a hearing unless the respondent waives this right in writing. Wis. Admin. Code § UWS 17.11(4)(c)2.

Wisconsin Admin. Code § UWS 17.12 governs hearing procedures. It requires the university to disclose to the respondent a full written explanation of the facts upon which the misconduct determination was based, along with evidence the investigating officer considered. Wis. Admin. Code § UWS 17.12(3). During the hearing, "[t]he respondent shall have the right to question adverse witnesses, the right to present information and witnesses, [and] the right to be heard on his or her own behalf." Wis. Admin. Code § UWS 17.12(4)(b). In cases where suspension or expulsion is recommended, or "where the respondent has been charged with a crime in connection with the same conduct" the respondent's attorney may "question adverse witnesses, present information and witnesses, and speak on behalf of the respondent." Wis. Admin. Code § UWS 17.12(4)(b). A verbatim record of the testimony is made during the hearing. § UWS 17.12(4)(d).

8

Following a decision by the hearing examiner or committee, in cases involving sexual assault and/or sexual harassment, both the complainant and respondent can appeal to the chancellor. Wis. Admin. Code § UWS 17.13(2). The chancellor's decision becomes final unless the University of Wisconsin System Board Of Regents agrees to hear the case. § UWS 17.14. Final decisions of the chancellor or the Board of Regents are appealable to Wisconsin circuit court under Wis. Stat. § 227.52. *See, e.g., Hedrich v. Bd. of Regents of Univ. of Wis. Sys.,* 2001 WI App 228, ¶ 20, 248 Wis. 2d 204, 635 N.W.2d 650; *DeCecco v. Bd. of Regents, Univ. of Wis.*, 151 Wis. 2d 106, 110, 442 N.W.2d 585 (Ct. App. 1989).

## SUMMARY OF THE ARGUMENT

This brief addresses two separate but related motions: the Defendants' motion to dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6) and the Plaintiff's motion for a preliminary injunction. In sum, Cephus's due process claim must be dismissed because he has not been denied liberty or property, he has received notice and an opportunity to be heard throughout the ongoing proceedings, and will continue to receive due process protections as the University's disciplinary proceedings progress. Yet, even if Cephus's claim was ripe, it fails on the merits. No court has held that procedures similar to the University of Wisconsin's violate a student's Fifth or Fourteenth Amendment rights.

Cephus's equal protection and race discrimination claims are undeveloped and do not meet basic pleading standards, and the Defendants must be dismissed for lack of personage under Section 1983 (at to the Board of Regents and official capacity claims), lack of personal involvement (as to Trueba and Blank), and qualified immunity (as to Hasselbacher, Trueba, and Blank).

The Motion for a Preliminary Injunction is inappropriate first and foremost because the Complaint fails to state a cognizable claim for relief. But even if this case were to move forward, U.S. Supreme Court precedent forbids this court from intruding on the State University's administrative hearing procedures. *Sprint v Jacobs*, 571 U.S. 69, 73, 134 S.Ct 584 (2013) *citing New Orleans Public Service Inc. v Council of City of New Orleans*, 491 U.S. 350, 37 (1989) (extending the *Younger* abstention doctrine to particular state civil proceedings). *Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity. *Younger*, 401 U.S. at 44. The Sixth Circuit recently applied *Younger* abstention to abstain from interfering in a university's disciplinary proceeding very similar to the one here. *Doe v. Univ. of Kentucky,* 860 F. 3d 365 (6th Cir. 2017).

10

# ARGUMENT

## I. The entire Complaint must be dismissed for failure to state a claim.

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." A motion to dismiss tests the sufficiency of the complaint; it does not determine the merits of the lawsuit. *See Triad Assocs., Inc. v. Chi. Hous. Auth.,* 892 F.2d 583, 586 (7th Cir. 1989). To survive a Rule 12(b)(6) challenge, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that it "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted).

Deciding a motion to dismiss, courts must accept the factual allegations as true, *see id.* at 572, in the light most favorable to the plaintiff. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). However, a complaint cannot simply contain "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must include specific allegations that, if true, make the plaintiff's claim for relief more than speculative. *See Twombly*, 550 U.S. at 555.

11

**B.     Cephus's due process claim fails because he was provided and continues to be provided constitutional due process.**

Cephus alleges the Defendants denied him due process because Hasselbacher proceeded with her Title IX investigation despite knowing that Cephus faces criminal charges arising from the same circumstances. (Dkt. 1 ¶¶ 86-88.) Specifically, he alleges denial of due process because he is being forced "to either waive his Fifth Amendment right against self-incrimination or risk the unfavorable outcome that will likely result should he fail to participate in the University proceeding." (Dkt. 1 ¶ 89.) Cephus also asserts denial of due process because the District Attorney's office purportedly has possession of exculpatory evidence that will not be available during the University's disciplinary proceedings.

Cephus's claim is without merit.  First, it is premature. As of the date of the Complaint, the University had not found him responsible for nonacademic misconduct. Should he be found responsible, he is entitled to a full hearing and appeal procedure though the University and Wisconsin courts. Second, a denial of constitutional due process cannot occur while a state continues to provide process. The Complaint establishes the Defendants are engaged in the process defined in Ch. UWS 17. If, after a hearing, Cephus is found responsible for nonacademic misconduct, Wisconsin law provides post-deprivation judicial review. Wis. Stat. § 227.52. Third, constitutional due process requires notice

and an opportunity to be heard. The University's procedures under Wis. Admin. Code Ch. 17 outline the procedures Cephus will be afforded. Those procedures, as a matter of law, meet constitutional requirements.

### 1. Cephus's procedural due process claim is premature.

To demonstrate a procedural due process violation, a plaintiff must establish (1) a cognizable liberty or property interest under the Fourteenth Amendment; (2) a deprivation of that liberty or property interest; and (3) a denial of due process. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). As of October 9, 2018, when this Complaint was filed, the University had not found Cephus responsible for nonacademic misconduct. The football team had suspended him from practice and game play, Hasselbacher had issued a no-contact directive prohibiting contact with the complaining students, Hasselbacher investigated the allegations of sexual misconduct that her office had received, and Hasselbacher submitted an investigatory report to the Office of Student Conduct & Community Standards. (Dkt. 1 ¶¶ 26, 28–61.) None of these actions amount to a deprivation of liberty or property.

Students have no liberty or property interest in playing sports, so Cephus's suspension from the football team does not qualify.[6] *Isabella A. by David A. v. Arrowhead Union High Sch. Dist.*, 323 F. Supp. 3d 1052, 1057–58 (E.D. Wis. 2018); s*ee also Hawkins v. NCAA*, 652 F. Supp. 602, 610 (C.D. Ill. 1987) (no "constitutionally protected right to participate in intercollegiate athletic post-season competition, gain tournament experience, and secure professional careers in athletics"). Moreover, none of the Defendants are alleged to have had any control over the Athletic Department's practice/play suspension decision.[7]

The no-contact directives that Hasselbacher issued do not trigger due process requirements. Cephus has no liberty or other constitutional interest in associating with the women who allege that he assaulted them. Outside of certain legal relationships, "the Constitution does not recognize a generalized

---

[6] "A number of circuits have determined specifically that the privilege of participating in interscholastic athletics falls outside the protection of the Due Process Clause of the Fourteenth Amendment of the United States Constitution." *Schaill by Kross v. Tippecanoe Cty. Sch. Corp.*, 679 F. Supp. 833, 853 (N.D. Ind.), *aff'd*, 864 F.2d 1309 (7th Cir. 1988); *Hamilton v. Tenn. Secondary Sch. Athletic Ass'n*, 552 F.2d 681 (6th Cir. 1976); *Mitchell v. La. High School Athletic Ass'n*, 430 F.2d 1155, 1157–58 (5th Cir. 1970); *Hawkins v. NCAA*, 652 F. Supp. 602, 610 (C.D. Ill. 1987).

[7] Cephus alleges the Student Athlete Disciplinary Committee suspended him from practice/play after the athletic department was advised by Hasselbacher that criminal charges were imminent. (Dkt. 1 ¶ 26.) There is no allegation that Hasselbacher, Trueba, or Blank had control over or even participated in the suspension decision.

right of social association." *Hone v. Cortland City Sch. Dist.*, 985 F. Supp. 262, 272 (N.D.N.Y. 1997); *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).

Finally, a state need not provide due process when taking preliminary measures—such as initial findings of culpability—if it promptly provides due process subsequent to the finding and prior to any permanent action, such as a sanction, expulsion, or other discipline. *See, e.g., Goss v. Lopez,* 419 U.S. 565, 581 (1975) (deprivations, such as suspensions, trigger due process requirements). In other words, there is no liberty or property right of avoiding the "inconvenience of having to go through the administrative process." *Abbs v. Sullivan*, 963 F.2d 918, 927 (7th Cir. 1992) (discussing appeal under the Administrative Procedure Act).

At this point, Cephus has not been deprived of a liberty or property interest. He does not have a constitutional liberty or property interest in not being subject to a student misconduct investigation that is both required under federal law[8] and the Wisconsin Administrative Code.  Even if the investigating officer issues initial findings of "responsible" for some of the alleged nonacademic misconduct code violations and recommends suspension or expulsion, Cephus has an automatic right to a hearing and appeal prior to the

---

[8] 20 U.S.C. s. 1092(f)(8)(B) & implementing regulations 34 CFR s. 668.46(k)

recommended sanction going into effect. (DPFOF ¶ 3.) Wis. Admin. Code §§ UWS 17.11(4)(c)2, 17.13.  This claim is premature and must be dismissed.

### 2.    Cephus has not exhausted available state procedures.

"The whole idea of a procedural due process claim is that the plaintiff is suing because the state failed to provide adequate remedies." *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003). Although "a plaintiff is not required to exhaust state remedies to bring a § 1983 claim, this does not change the fact that no due process violation has occurred when adequate state remedies exist." *Id.* Here, Cephus alleged he is being subject to the University's investigatory and disciplinary procedures, as are outlined in Wis. Admin. Code Ch. 17. In essence, Cephus's due process claim amounts to a request that he *not* be subject to the State's process at all – or, at least not right now. Under the circumstances of this case, the federal court has no authority under the due process clause or any other law to stop a state from engaging in due process proceedings that the state legislature has authorized. (*See* Section II. A *infra*) (discussing *Younger* abstention).

Cephus's due process claim also fails because the State of Wisconsin makes available extensive post-deprivation remedies, negating a due process claim. *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). "Only if there is no provision for a post-termination hearing must the pre-termination hearing provide all the procedural safeguards" due. *Id.* (quoting

quoting *Swank v. Smart*, 898 F.2d 1247, 1256 (7th Cir. 1990)). In *Michalowicz*, a public employee asserted violation of his due process rights because he was terminated by an allegedly biased hearing panel. 528 F.3d at 535–36. Under Illinois' administrative procedure act, the hearing panel's decision was subject to judicial review. Holding that a state law remedy should not be found to violate the United States Constitution unless it is "inadequate to the point that it is meaningless or nonexistent," the court determined the plaintiff could not state a due process claim. *Id.* at 535 (citation omitted).

Like Illinois, Wisconsin's administrative procedure act, Wis. Stat. ch. 227, affords constitutionally adequate post-deprivation procedures. *See* Wis. Stat. § 227.57 (allowing a court to set aside or modify, or remand a state administrative decision if the agency's decision "has been impaired by a material error in procedure or a failure to follow prescribed procedure," if the agency misinterpreted the law, if its decision is not supported by the evidence, or if it abused its discretion). Thus, the mere availability of state procedures, whether utilized or not, makes federal judicial intervention inappropriate. *See, e.g., Leavell v. Ill. Dep't of Nat. Res.,* 600 F.3d 798, 805 (7th Cir. 2010) (holding failure to avail oneself of available post-deprivation procedures does not equate to a constitutional denial of procedure.).

### 3. Cephus's due process claim fails on the merits because he will receive constitutionally adequate due process.

Even if Cephus's due process claim was ripe, he could not succeed on the merits. He alleges he was denied and will continue to be denied due process because 1) concurrent criminal proceedings force him to choose between testifying on his own behalf during the University's non-academic misconduct proceedings and waiving his Fifth Amendment rights in concurrent criminal proceedings, or not testifying on his own behalf in the University's nonacademic misconduct proceedings, and 2) he might not have access to certain evidence within the possession of the District Attorney's Office. There is simply no legal authority to support this position. On the contrary, the courts that have addressed cases against universities who have procedures similar to the UW System have found no due process violations.

### a. The University's disciplinary proceedings do not present Cephus with an unconstitutional choice

A number of courts around the country have addressed the precise issue of whether postponement of a college disciplinary hearing until resolution of related criminal charges is constitutionally required; all have rejected plaintiff's argument. None have found that the student faced an unconstitutional choice about whether to testify at the student disciplinary hearing. Most courts have determined that the student could elect to remain

silent during the hearing and therefore the testimony was entirely voluntary and did not implicate Fifth Amendment concerns.

In *Hart v. Ferris State College*, the court surveyed case law around the country and noted that courts have all rejected plaintiff's claim that his Fifth Amendment right against self-incrimination in parallel criminal proceedings mandated a stay of university civil proceedings. 557 F. Supp. 1379 (W.D. Mich. 1983). In *Hart*, the court found that under the respondent's disciplinary hearing procedure the student could elect to remain silent at the hearing and that no inference pointing to guilty could be drawn. Accordingly, the court held that the testimony would be voluntary and the Fifth Amendment did not apply. *Id.* at 1385.  Here, the University's Office of Student Conduct and Community Standards trains student conduct staff members and hearing panel members that they cannot draw any negative inference from a respondent's unwillingness to participate in an interview or testify during a student conduct hearing. (DPFOF ¶ 2.)

A similar analysis was used to decide that a student's testimony at a college disciplinary hearing was not compelled testimony in *Gabrilowitz v. Newman,* 582 F.2d 100 (1st Cir. 1978). The court described the position of a student whose testimony is not compelled as follows:

> Appellee's testimony would be, therefore, entirely voluntary and subsequently admissible at the criminal case. Although the possibility of expulsion may make participation a wise choice, the hearing procedures

> do not place appellee "between the rock and the whirlpool." *Garrity v. New Jersey, supra,* 385 U.S. at 498. He can, if he wishes, stay out of the stream and watch the proceedings from dry land. But, if he does so, he forfeits any opportunity to control the direction of the current. Appellee must decide whether or not to testify at the hearing with the knowledge that, if he does, his statements may be used against him in the criminal case.

*Gabrilowitz*, 582 F.2d at 104. "Although the choice facing him is difficult, that does not make it unconstitutional." *Id.*; *See also DeVita v. Sills,* 422 F.2d 1172, 1178–80 (3rd Cir. 1970) (Fifth Amendment does not require postponement of civil proceedings whenever related criminal charges are pending).

The Supreme Court of Vermont reached the same conclusion in *Nzuve v. Castleton State College*, 335 A.2d 321 (Vt. 1975). The court found that at the university proceeding, the plaintiff could remain silent, without his silence being used against him, and if he provided testimony, it would be his voluntary election. *Id*. at 326.

> The election to speak or remain silent is not confined to the college court proceedings. It is the same election that the plaintiff must make when, after appropriate warning, he is questioned by police or other enforcement officials. And the same results ensue; his silence may not be used against him, while his statements, if contradictory or incriminating, may. It is also the same choice he would be compelled to make if deposed in a related civil action.

*Id*. at 325–26. The court therefore rejected plaintiff's argument that the Fifth Amendment applied and refused to stay the university proceedings. *Id*. at 326.

Additionally, other courts have found that if students' testimony at the hearing is considered compelled because of the threat of expulsion, then that

testimony would not be admissible in the parallel criminal proceeding, and therefore the Fifth Amendment rights are again not implicated. In *Furutani v. Ewigleben,* 297 F. Supp. 1163 (N.D. Cal. 1969), the plaintiffs were students charged by the college authorities with unlawful actions during campus demonstrations. A variety of criminal charges, based on the same actions, were brought against the plaintiffs.

In refusing to order the postponement of any expulsion hearings until after the criminal trials, the *Furutani* court reasoned that if the students are forced to incriminate themselves at the disciplinary hearing to avoid expulsion, then under *Garrity v. New Jersey,* such incriminating statements would be inadmissible in any subsequent criminal proceeding because they would have been obtained by compulsion. 385 U.S. 493 (1967). Therefore, the court found the proposed disciplinary hearings posed no threat to the Fifth Amendment rights of the students. *See also Keene v. Rodgers,* 316 F. Supp. 217, 221–22, n.4 (D. Me. 1970). The court in *Nzuve* also concurred with the reasoning. 335 A.2d at 326.

These courts have also rejected these arguments because an injunction would have the practical effect of delaying university discipline proceedings for years until the plaintiff's criminal proceedings end after trial and the appeal process.

> Educational institutions have both a need and a right to formulate their own standards and to enforce them; such enforcement is only coincidentally related to criminal charges and the defense against them.

*Id.* at 325.

A delay of this length could mean that the complainants or respondent in a student disciplinary proceeding could have graduated by the time the student conduct hearing is conducted. *Id.* "Nor would it be at all unusual for the temporary relief here sought to enable the plaintiff to complete his education, thus effectively completing an 'end run' around the disciplinary rules and procedures of the college." *Id.* This would effectively prevent the university from enforcing their own policies to create an environment of safety on campus by creating an untenable position where complainants and respondents would remain on campus together for years while the university proceedings were held in abeyance. Requiring postponement when there are concurrent criminal proceedings would have the perverse effect of limiting the University's ability to enforce conduct standards in the most serious cases.

Cephus also contends that the University must stay the disciplinary proceedings because he has not yet received all of the evidence from the Dane County District Attorney's office that he wants to present at the student conduct hearing. He asserts that the evidence is significant, critical, and potentially exculpatory. (Dkt. 7 ¶ 35.) The District Attorney's Office informed the University that it would not provide it with access to additional materials

22

prior to the resolution of the criminal proceedings. (PPFOF ¶ 31.) Cephus, however, is entitled to receive all evidentiary materials from the District Attorney, including in particular exculpatory evidence. Wis. Stat. § 971.23; *Brady v. Maryland*, 373 U.S. 83 (1963).

"[T]he due process rights of students facing discipline in an educational setting are not the same as those afforded to defendants in a criminal or quasi-criminal setting." *Marshall v. Indiana University,* 170 F. Supp. 3d at 1207 (S.D. Ind. 2016). There is no requirement under *Brady* that the University obtain any potentially exculpatory evidence before the disciplinary proceeding may commence. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 662 (S.D. Ohio 2016); *Tanyi v. Appalachian State Univ.*, No. 5:14–CV–170RLV, 2015 WL 4478853, at *5 (W.D.N.C. July 22, 2015).

The University's parallel disciplinary proceedings do not, as a matter of law, place Cephus or others similarly facing criminal and disciplinary charges, in a constitutionally untenable position.

> **b.   The process outlined in the Wisconsin Administrative Code provide constitutional due process**

In comparison to procedural protections provided by other state universities, the UW System's Administrative Code provisions guarantee students facing discipline more protection. For example, in *Marshall v. Indiana University*, the plaintiff was expelled from school after a hearing panel

found him responsible for sexual misconduct. 170 F. Supp. 3d at 1205. Upon receiving notice of nonacademic misconduct charges, the plaintiff was immediately placed on interim suspension and only allowed on campus to meet with the student conduct office. *Id.* at 1204. During the hearing, the university was represented by a non-practicing attorney, while the plaintiff's attorney could attend, but not participate in, the hearing. *Id.* at 1204–05. Among other things, the plaintiff asserted denial of due process in part because he was forced into the "untenable position of having to choose between his due process rights and his Fifth Amendment right to not testify against himself" with respect to concurrent criminal proceedings. *Id.* at 1206. While the court found the plaintiff's argument compelling, the argument did "not find support under Seventh Circuit law." *Id.* at 1208. Acknowledging it was "bound by what the law is and not by what [the plaintiff] believes the law ought to be," the court dismissed the due process claim. *Id.*

The Wisconsin Administrative Code, Sections 17.11, 17.12, and 17.13 provide significantly more due process protections, including affording Cephus access to the University's evidence, allowing his attorney to present evidence and cross-examine witnesses, and allowing Cephus to appeal if the hearing committee upholds suspension or expulsion. While the proceedings are pending, Cephus remains in school as a student. (DPFOF ¶ 4.) The University's nonacademic misconduct procedures provide far more process than what was

upheld in the *Marshall*. 170 F. Supp. 3d at 1205. There is simply no case law holding that procedures such as those provided by the University are constitutionally inadequate.

### 4. The individual defendants are entitled to qualified immunity.

Hasselbacher, Trueba, and Blank are entitled to qualified immunity with respect to the due process claim because Cephus did not identify a knowing violation of a clearly established federal right. State government officials are entitled to qualified immunity unless their conduct violated a federal statutory or constitutional right, and the unlawfulness of their conduct was "clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation omitted). Although qualified immunity is an affirmative defense, the plaintiff has the burden of demonstrating that the defendant's error was "clearly established." *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017).

The "clearly established" requirement is a "demanding standard," requiring a plaintiff to show that settled law clearly prohibits a defendant's particular conduct. The U. S. Supreme Court recently explained:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority.' " It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every

reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know.

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." This requires a high "degree of specificity."

*Wesby*, 138 S. Ct. at 589–90 (citations omitted).

"While [the Supreme] Court's case law 'do[es] not require a case directly on point' for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (alteration in original) (citation omitted).

Here, Hasselbacher was adhering to federal law that requires universities to investigate sexual harassment and sexual assault allegations, and in doing so, she was following the Wisconsin Administrative Code, which directs her to complete a report and submit it to the Office of Student Conduct & Community Standards. 20 U.S.C. § 1092(f)(8)(A-C) (universities subject to the Clery Act (as is UW-Madison) must have grievance procedures for sexual assault allegations that "provide a prompt, fair, and impartial investigation and resolution; *see also* 34 CFR Part 668 (Regulations governing Violence Against Women Act requiring prompt investigation and resolution), 20 U.S.C. § 1681 *et seq*. (Title IX of the Education Amendments of the Civil Rights Act);

26

Department of Education's 2001 Revised Sexual Harassment Guidance at p. 21 "because legal standards for criminal investigations are different, police investigations or reports may not be determinative of whether harassment occurred under Title IX and do not relieve the school of its duty to respond promptly and effectively"; Department of Education's September 2017 Q&A on Campus Sexual Misconduct at p. 3 "A school must adopt and publish grievance procedures that provide for a prompt and equitable resolution of complaints of sex discrimination, including sexual misconduct"; Wisconsin Administrative Code § UWS17.01, et seq.

Neither the Plaintiff's Complaint, Motion for a Preliminary Injunction, nor supporting papers identify any law supporting the theory that when a university investigates allegations of campus sexual harassment and/or sexual assault, the investigators are violating someone's constitutional due process rights. Further, as identified in the cases cited above, courts around the country have rejected Cephus's arguments. *Marshall,* 170 F. Supp. 3d 1201; *Hart*, 557 F. Supp. 1379; *Gabrilowitz,* 582 F.2d 100; *Nzuve,* 133 Vt. 225; *Furutani,* 297 F. Supp. 1163; *Keene,* 316 F. Supp. 217; *Goldberg*, 248 Cal. App.2d 867. Cephus cannot come close to meeting the demanding standard that it is "clearly established" that the defendants' actions would violate his constitutional rights. Accordingly, the Defendants are entitled to qualified immunity and Cephus's Complaint should be dismissed.

27

**5.  The Board of Regents and defendants in their official capacities must be dismissed because they are not persons under 42 U.S.C. § 1983**

Federal civil rights statute 42 U.S.C. § 1983 confers no substantive rights; it is a procedural statute that allows a private right of action for persons to seek redress of constitutional violations. A plaintiff who brings § 1983 claims must comply with the statute's procedural requirements as well as satisfy the elements of the underlying constitutional violation. *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997). Before this court addresses the alleged Fourteenth Amendment violations, it must satisfy itself that Cephus is entitled to proceed against every Defendant under § 1983.

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Plaintiffs may only bring claims against "persons" under § 1983. The state is not a "person" under § 1983 and neither are its officials acting in their official capacities. *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989). The Board of Regents is an arm of the State of Wisconsin.  Therefore, Cephus's Section

28

1983 due process claim must be dismissed as to the Board of Regents and the defendants in their official capacities for lack of "personhood."

### C. The Complaint fails to state an equal protection claim because there is no allegation that Cephus was treated differently than any other student subject to a Title IX investigation.

The Complaint alleges violation of the equal protection clause but does not explain the basis for the violation. Instead, it recites the text of the Fourteenth Amendment, and states, "The allegations hereinabove demonstrate that Defendants violated Plaintiff's procedural due process rights, in violation of the Fourteenth Amendment and, therefore, 42 U.S.C. § 1983." (Dkt. 1 ¶ 100.)

A 42 U.S.C. § 1983 claim alleging violation of the equal protection clause requires a plaintiff show the defendants intentionally treated him differently than others similarly situated because of his membership in a particular class, and without legal justification under the appropriate level of scrutiny. *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 950 (7th Cir. 2002). The equal protection clause targets "invidious classification of persons aggrieved by [a] state's action" and requires the defendant to have intentionally "singled out a particular group for disparate treatment" in order to adversely affect members of a particular group. *Id.* at 951 (citation omitted).

A plaintiff who fails to allege membership in a particular group, and who does not compare treatment of his group with that of those outside the group fails to state a claim under the equal protection clause. *Parker v. Lyons*, 940 F. Supp. 2d 832, 838 (C.D. Ill. 2013), *aff'd*, 757 F.3d 701 (7th Cir. 2014); *See also Park v. Ind. Univ. Sch. of Dentistry,* 781 F. Supp. 2d 783, 790 (S.D. Ind. 2011) ("To establish a prima facie case of discrimination under the equal protection clause, a plaintiff is required to show that he 'is a member of a protected class,' that he 'is otherwise similarly situated to members of the unprotected class,' and that he 'was treated differently from members of the unprotected class.'" (citation omitted)) *aff'd sub nom, Sung Park v. Ind.* 692 F.3d 828 (7th Cir. 2012).

In this case, Cephus may be alleging unequal treatment based on his race, (Dkt. 1 ¶ 21), based on being a male athlete, (Dkt. 1 ¶ 62), or based on the fact that he is in a class of individuals who are subject to both nonacademic misconduct proceedings and criminal charges, (Dkt. 1 ¶¶ 5–6). The state action that he complains of is Hasselbacher's decision to proceed with the Title IX investigation process by issuing a Final Investigative Report to the Office of Student Conduct & Community Standards for decision-making.  (Dkt. 1 ¶ 61.) The equal protection claim can be summarily dismissed because the Complaint does not allege—nor event hint—that similarly situated people who are not

African American, not male athletes, or not facing criminal charges, are treated any differently.

Nor did Cephus adequately allege a class-of-one equal protection claim. Class-of-one equal protection law protects citizens from being treated "intentionally . . . differently from others similarly situated" for no rational reason. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "The treatment must be wrongful and differ from the norm or common practice in a manner that demonstrates discrimination." *Austin v. Spiller,* No. 18-CV-1152-DRH, 2018 WL 4362557, at *10 (S.D. Ill. Sept. 13, 2018) (citing *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1009 (7th Cir. 2004)).

Cephus did not plead facts indicating he was targeted for arbitrary or irrational treatment. On the contrary, the gravamen of his claim is that the University refused to *exempt* him from the nonacademic misconduct process outlined in the Wisconsin Administrative Code. (Dkt. 1 ¶¶ 5–9.) In other words, he faults the Defendants for not treating him *differently*. He alleged there was some delay in processing his nonacademic misconduct case, but following a meeting with the complainant's father, the investigation moved forward. (Dkt. 1 ¶ 63)  These allegations do not demonstrate the type of irrational, arbitrary, or malicious treatment necessary to state a class-of-one claim. *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). At worst, they could infer

31

irregularities in procedure that do not violate the Constitution. *McDonald*, 371 F.3d at 1009; *Bell v. Duperrault*, 367 F.3d 703, 712 (7th Cir. 2004). Finally, even if Cephus had alleged some sort of wrongful treatment, he did not allege it was discriminatory; there was no reference to the Defendants treating others subject to the nonacademic misconduct process better.

Cephus cannot state an equal protection claim because he did not allege he was treated differently than anyone else.

### D.     The Complaint fails to state a claim for race discrimination.

Federal civil rights statute 42 U.S.C. § 1981 states: "[A]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, …as is enjoyed by white citizens. . ." As defined in § 1981, "the term, 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Section 1981 forbids race discrimination. In this case, however, Cephus's 42 U.S.C. § 1981[9] race discrimination claim must be dismissed because there is no evidence a state actor was motivated by discriminatory animus, there is no connection between an alleged racist rant

---

[9] Section 1983 is the exclusive remedy for violations of § 1981 committed by state actors. Thus, the claim should more properly be brought under § 1983 to redress violations of § 1981. *Campbell v. Forest Pres. Dist. of Cook Co.,* 752 F.3d 665, 671 (7th Cir. 2014); *Jett v. Dall. Indep. Sch. Dist.,* 491 U.S. 701, 735-36 (1989).

and the decision to complete the Title IX investigation, and both federal and Wisconsin law require completion of the Title IX investigation, regardless of the investigating officer's motives.

### 1. There is no evidence Hasselbacher was motivated by discriminatory animus.

Cephus attempts to tie the fact that Hasselbacher continued working on her Title IX investigation with a meeting that occurred on July 19, 2018, wherein one of the complainant's father's allegedly made racist remarks. (Dkt. 1 ¶ 63.) To state a claim, however, Cephus would have to put forth facts sufficient to raise an inference that Hasselbacher was influenced by these alleged racist comments, felt racial animosity herself, and was motivated by that racial animosity. This he cannot do, because the Wisconsin Administrative Code and U.S. Department of Education requirements mandate that Hasselbacher complete her investigation, regardless of her motivation for doing so. Wis. Admin. Code § UWS 17.11-13; 20 U.S.C. § 1092(f)(8)(B); 34 CFR s. 668.46(k).

More compelling, however, is that Cephus does not allege Hasselbacher's report was, in any manner, tinged with racial animosity. In fact, Cephus alleged Hasselbacher submitted three draft reports to Cephus's attorneys for review and comment before submitting her Final Investigatory Report to the Office of Student Conduct & Community Standards. (Dkt. 1 ¶¶ 54–61.)

Without any allegation that Hasselbacher treated Cephus differently than anyone else because of race, and without allegation that her report was infected with racial animus, the race discrimination claim must be dismissed.

### 2. The "cat's paw" theory of liability does not apply.

The Compliant does not allege Hasselbacher or any other Defendant was motivated by discriminatory animus. Therefore, to state a claim, the Plaintiff would have to allege something akin to a cat's paw theory. This theory allows a plaintiff to proceed against a non-decision-maker in an employment discrimination action when the non-decision-maker's racial bias so infected the ultimate decision that the decision itself was discriminatory. *Smith v. Bray*, 681 F.3d 888, 897 (7th Cir. 2012), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 765 (7th Cir. 2016), (quoting *Alexander v. Wis. Dep't of Health & Family Servs.*, 263 F.3d 673, 684 (7th Cir. 2001)). This theory, however, does not appear to have been applied outside of the employment discrimination context.

It is well established that school-disciplinary committees are entitled to a presumption of impartiality, absent a showing of actual bias. *Doe v. Cummins*, 662 F. App'x 437, 449–50 (6th Cir. 2016) ("[I]n a 'university setting, a disciplinary committee is entitled to a presumption of honesty and integrity, absent a showing of actual bias.'" (quoting *Atria v. Vanderbilt Univ.*, 142 F. App'x 246, 256 (6th Cir. 2005))). "Thus, '[a]ny alleged prejudice on the part of

34

the [decisionmaker] must be evident from the record and cannot be based in speculation or inference.'" *Id.* at 450 (alterations in original) (quoting *Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987)).

In *Doe v. Cummins*, the Sixth Circuit Court of Appeals rejected nearly identical claims regarding the bias of a Title IX investigative officer. 662 F. App'x at 450. The court found that the investigator was complying with federal regulations and therefore this could not be evidence of bias. *Id.* The court also found that

> [A]ny claim regarding the allegedly biased investigative report is weakened by the fact that [the investigator] did not ultimately serve on the ARC panels that adjudicated appellants' culpability. Instead, appellants' responsibility was adjudicated by an independent panel that considered all of the evidence allegedly left out of [the investigator's] investigative report. Accordingly, even if [the investigator's] initial investigations of the incidents were biased, those defects were cured by the ARC panel's subsequent handling of appellants' cases.

*Id.*

Similarly here, Hasselbacher was complying with Title IX and related guidance, the VAWA amendments to the Clery Act, as well as Wis. Admin. Code Ch. UWS 17 when she conducted her investigation and drafted her report. Moreover, like the investigator in *Cummins,* even if Cephus's theory is presumed true that racial bias from the complainant's father affected the speed at which Hasselbacher completed her report, she does not decide whether a violation of the student non-academic misconduct code occurred. Hasselbacher

35

submitted the report to the University's Office of Student Conduct & Community Standards for an independent review. (Dkt. 1 ¶ 61.) Assistant Dean Cox will issue a decision whether the information gathered during the investigation demonstrates a violation or violations of the student non-academic misconduct code. (*Id.*) Cephus then has a right to a hearing before a hearing committee wherein his attorney can present evidence and question witnesses. Wis. Admin. Code § UWS 17.12. As in *Cummins*, plaintiff's racial bias claim against Hasselbacher fails.

### E.   Trueba and Blank must be dismissed for lack of personal involvement.

#### 1.   Section 1983 requires personal involvement

A plaintiff may only bring § 1983 claims against individuals who were personally involved in the constitutional deprivations they purport to have suffered. *See Vinning–El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011). "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (emphasis omitted). An official may be liable for a constitutional violation only if he or she knew about it and had the ability to intervene but failed to do so. *See Fillmore v. Page*, 358 F.3d 496, 505–06 (7th Cir. 2004). But this rule "is not so broad as to place a responsibility

on every government employee to intervene in the acts of all other government employees." *Windle v. City of Marion,* 321 F.3d 658, 663 (7th Cir. 2003). Vicarious liability is inapplicable to § 1983 suits and, therefore, to state a claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Burks v. Raemisch*, 555 F.3d 592, 593–94 (7th Cir. 2009).

In the context of a Rule 12(b)(6) motion, a plaintiff must allege enough facts to show a defendant was personally involved in a constitutional deprivation. *Moore v. Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993). Notice pleading allows general averments of personal involvement. *See, e.g., Burks*, 555 F.3d at 594.

## 2. Blank and Trueba were not personally involved in the alleged due process, equal protection, or Section 1981 violations.

Section 1983 claims that do not allege constitutional violations are subject to dismissal under Fed. R. Civ. P. 12(b)(6). *John Doe v. Metro. Police Dep't. of D.C.*, 445 F.3d 460, 467 (D.D.C. 2006). In this case, the only constitutional violation alleged is Hasselbacher's decision to complete her Title IX investigation and provide the Final Investigative Report to the Office of Student Conduct & Community Standards. According to the Complaint, Hasselbacher was responsible for overseeing and implementing the policies

and procedures outlined in Wis. Admin. Code Ch. UWS 17, (Dkt. 1 ¶ 69), Hasselbacher was aware of the criminal charges against Cephus and proceeded with her investigation and report, (Dkt. 1 ¶¶ 86, 87, 89), and Hasselbacher discriminated against Cephus by proceeding with her Title IX investigation at the behest of the complainant's father, (Dkt. 1 ¶¶ 108–113). Blank is not alleged to have had any involvement, and Trueba's involvement is limited to attending a meeting. (Dkt. 1 ¶ 111.)

Neither Blank nor Trueba are alleged to have participated in Hasselbacher's decision to proceed with her Title IX investigation and thus cannot be held personally liable for that decision. As the Seventh Circuit has explained: "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks*, 555 F.3d at 596. Cephus's § 1983 claims against Blank and Trueba must be dismissed.

## II. Cephus is not entitled to a preliminary injunction because the Court should abstain under *Younger v. Harris*, and because he fails to meet the elements required for injunctive relief.

### A. The Court should abstain from interfering with the State's administrative proceeding pursuant to *Younger v. Harris*, 401 U.S. 37 (1971).

In cases, like this one, where students seek a preliminary injunction prior to the conclusion of the university disciplinary proceedings, federal courts have abstained from intervening. *Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal

prosecutions and to preserve equity and comity. *Younger v. Harris*, 401 U.S. 37, 44 (1971.) The Supreme Court has extended *Younger* abstention to particular exceptional state civil proceedings. *Sprint Commc'ns, Inc.* 571 U.S. at 73 (citing *New Orleans Pub. Serv. Inc.*, *(NOPSI)*, 491 U.S. at, 373). *Younger* permits abstention when there is an ongoing state criminal prosecution, in certain civil enforcement proceedings that are akin to criminal prosecutions, and in "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 73 (quoting *NOPSI*, 491 U.S. at 367–68).

Once the proceeding is found to fit into one of the three *NOPSI* categories listed above, the court evaluates the proceeding using a three-factor test laid out in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982). *See Sprint*, 571 U.S. at 81 (clarifying that the *Middlesex* factors are only considered by a court after the court decides that one of the *NOPSI* exceptional circumstances is present). The *Middlesex* test states that abstention may occur when three criteria are met: (1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims. *Middlesex*, 457 U.S. at 432–34.

In *Doe v. University of Kentucky*, the Sixth Circuit recently analyzed a university disciplinary hearing brought by a student accused of sexual misconduct seeking to enjoin the proceeding. 860 F. 3d 365 (6th Cir. 2017). The Sixth Circuit applied the *NOPSI/Middlesex* analysis and held that the district court must abstain under *Younger* until the university disciplinary proceeding concluded. *Id*. at 370–71.

The court found that the university disciplinary proceedings "involved a filed complaint, an investigation, notice of the charge, and the opportunity to introduce witnesses and evidence." *Id*. at 370. All of these same procedural elements are applicable in the disciplinary process here. Wis. Admin. Code § UWS  17.12 – 17.14. Moreover, unlike in *Doe*, the University of Wisconsin System's process permits cross-examination by the respondents' attorney. Wis. Admin. Code § UWS 17.12(4)(b). The *Doe* court found that the disciplinary proceedings "contain[ed] enough protections and similarities to qualify as 'akin to criminal prosecution' for purposes of *Younger* abstention." 860 F. 3d at 370.

The court then applied the three *Middlesex* factors and found that *Younger* abstention applies. *Id*. at 370–71. The court found that the proceeding was adjudicative in nature. *Id*. at 370. It found the "state has an interest in eliminating sexual assault on its campus and establishing a fair and constitutionally permissible disciplinary system." *Id*.  As to the third factor, it found the student had an adequate opportunity to raise his constitutional

40

claims in the university proceedings, and that "he may raise his claims again in federal court once the proceedings have concluded." *Id*. at 370–71.

All of these factors apply here to the University's disciplinary process. The proceeding is adjudicative and the University maintains the same interests as stated by the *Doe* court. Further, Cephus has numerous avenues through appeal of the university proceeding to raise his challenges, constitutional or otherwise. He may appeal an adverse decision of the hearing panel to the chancellor and has the opportunity for a discretionary appeal to the Board of Regents. Wis. Admin. Code §§ 17.13, 17.14.

Cephus may then appeal this decision via Wis. Stat. ch. 227 to Wisconsin state circuit court, and pursue subsequent appeals. Throughout these proceedings, a plaintiff may raise constitutional issues. *Linse v. State, Labor & Indus. Review Comm'n*, 135 Wis. 2d 399, 405 n.1, 400 N.W.2d 481, (Ct. App. 1986) (citing *Omernick v. DNR,* 100 Wis.2d 234, 248, 301 N.W.2d 437, 444, *cert. denied,* 454 U.S. 883 (1981)); *see also* Wis. Stat. § 227.57(4) (providing judicial review to address procedural flaws in the agency proceeding); *Majors v. Engelbrecht,* 149 F.3d 709, 713 (7th Cir. 1998) (subsequent judicial review of administrative proceeding provides adequate opportunity to raise constitutional claims). The state procedures will provide Cephus with an adequate opportunity to raise his constitutional claims. All three *Middlesex* factors are satisfied, and therefore *Younger* abstention applies.

In addition, as the *Doe* court found, none of the exceptions to *Younger* abstention apply. 860 F.3d at 371. "These exceptions include bad faith, harassment, or flagrant unconstitutionality of the statute or rule at issue." *Id*. To the extent Cephus alleges that harassment or bad faith exceptions apply based on his cat's paw theory that Hasselbacher's decision to issue the charge letter was influenced by racial animus from the complainant's father, this claim is insufficient to meet the exception. As discussed above, even if this claim was valid as to Hasselbacher, which it is not, she has no involvement with the decisions reached by the hearing panel or the reviewers on appeal. Moreover, Cephuys does not come close to reaching the "high bar" of flagrant unconstitutionality as to any of the university's policies. *Id*. In *Doe*, the court found no bad faith, harassment, or flagrant unconstitutionality even when the review board had twice remanded for new hearings because of procedural problems that had occurred. *Id*.

Other "courts have found similar disciplinary proceedings to warrant abstention." *Choudhry v. Regents of the Univ. of Cal.*, No. 16-CV-05281-RS, 2016 WL 6611067, at *4 (N.D. Cal. Nov. 9, 2016) (collecting cases). The court in *Choudhry* applied the same analysis and found that abstention applied. "Regardless of how history may judge the manner in which the university has handled this case, federal intervention at this stage is not warranted. The UC disciplinary process is an ongoing state judicial proceeding that implicates

important state interests and offers adequate opportunities for [the plaintiff] to raise his constitutional challenges." Abstention is proper under *Younger v. Harris*, 401 U.S. 37 (1971)." *Id.* at * 1.

The few cases that have granted a preliminary injunction enjoining universities from issuing discipline have done so only *after* the state administrative proceedings have concluded. *See, e.g. Doe v. Univ. of Cincinnati,* 872 F.3d 393, 396, 398, 407 (6th Cir. 2017) (enjoining suspension of student found responsible for sexual misconduct after a hearing that likely failed to meet due process requirements).

Therefore, under the *Younger* abstention doctrine, this Court should deny Plaintiff's Motion to stay the university disciplinary proceedings and should abstain from interrupting those proceedings until they are concluded.

### B. Plaintiff fails to meet the elements required for preliminary injunctive relief.

Even if the *Younger* abstention doctrine did not apply, Cephus fails to meet the elements required for a preliminary injunction. "The purpose of a preliminary injunction is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar,* 841 F.2d 712, 717 (7th Cir. 1988). "[G]ranting of a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984)

(citation omitted). A preliminary injunction is an extraordinary remedy. *Shaffer v. Globe Prot., Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983).

To obtain a preliminary injunction, a party must show that it is reasonably likely to succeed on the merits, it is suffering irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest. *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011); *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

"If the moving party meets this threshold burden, the district court weighs the factors against one another in a sliding scale analysis, which is to say the district court must exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied." *Christian Legal Soc'y,* 453 F.3d at 859 (citation omitted). The movant bears the burden of persuasion with regard to each factor, and "If a plaintiff fails to meet just one of the prerequisites for a preliminary injunction, the injunction must be denied." *Cox v. City of Chicago*, 868 F.2d 217, 223 (7th Cir. 1989).

### A.    Likelihood of success on the merits[10]

---

[10] *See also* Section I.B.3, *supra*.

As addressed fully above in support of defendants' motion to dismiss, courts have rejected both Cephus's Fifth Amendment and due process arguments when faced with similar facts. Cephus cannot demonstrate a reasonable likelihood of success on the merits given these decisions from courts around the country. Cephus does not cite any cases supporting a requirement that a federal court stay proceedings until all available evidence held by the District Attorney's office is available to a student facing nonacademic misconduct charges. An order staying the University disciplinary proceedings until the respondent obtains every piece of evidence he or she believes is relevant would create the same lengthy delays in the University proceedings that courts have determined are untenable.

Cephus's Brief in Support of his Motion for Preliminary Injunctions fails to cite even one case in support of the relief he seeks. His motion for preliminary injunction must be denied on this basis alone.

**2.   Cephus has not experienced irreparable harm that outweighs the harm the University will suffer if the injunction is granted.**

Applying the irreparable harm factor also weighs against an injunction. As discussed above, neither Plaintiff's due process rights nor his privilege against self-incrimination have been or will be violated. If he is initially found responsible for nonacademic misconduct he is entitled to a panoply of due process protections through the University's disciplinary hearing process,

appeal procedures, and judicial review in Wisconsin courts. If, after a hearing, Cephus is found responsible for nonacademic misconduct, he can appeal his discipline to the Chancellor. Only if and after the Chancellor upholds a sanction of suspension or expulsion or Cephus waives his right to further disciplinary proceeding would he lose his status as a student. As it is now, Cephus remains a student. (DPFOF ¶ 4.)

### 3. Cephus has an adequate remedy at law.

This factor also weighs against an injunction because Cephus has numerous adequate remedies at law. He has not yet availed himself of the hearing process, nor if necessary, of the appeals through the university and state circuit court.

### 4. An injunction would harm the public interest.

Likewise, this factor also weighs against an injunction. Staying the University's disciplinary proceedings would impede its interest in maintaining an expeditious process for addressing whether students violated university policies. The delay would also prolong the complainants' involvement in the student conduct proceedings at issue in this case. As discussed above, the stay Cephus seeks could result in a delay of many years before the criminal process is finally resolved at trial or on appeal. The complainants, respondent, and witnesses may no longer be students by the time the criminal proceedings are final. The parties and witnesses may be located in other parts of the country

or world, making return for a hearing costly and inconvenient. This delay could have a chilling effect on other students' willingness to report instances of criminal misconduct such as sexual assault to university officials if the result will be a lengthy delay that often moots any relief the university can offer.

The facts of this case do not "justify imposing a prior judicial restraint" on the university's disciplinary proceedings. *Schaill by Kross v. Tippecanoe Cty. Sch. Corp.*, 679 F. Supp. 833, 858 (N.D. Ind.), aff'd, 864 F.2d 1309 (7th Cir. 1988). The motion for a preliminary injunction is unnecessary, impractical, and contrary to law.

## CONCLUSION

The Defendants ask this court to dismiss Cephus's Complaint in its entirety and deny his Motion for a Preliminary Injunction.

Dated this 31st day of October, 2018.

Respectfully submitted,

BRAD D. SCHIMEL
Wisconsin Attorney General

s/Anne M. Bensky
ANNE M. BENSKY
Assistant Attorney General
State Bar #1069210

BRANDON T. FLUGAUR
Assistant Attorney General
State Bar #1074305

Attorneys for Defendants

47

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-9451 (Bensky)
(608) 266-1780 (Flugaur)
(608) 267-8906 (Fax)
benskyam@doj.state.wi.us
flugaurbt@doj.state.wi.us